## Martin et al. v. Harris et al.

June 20, 1947.

E. J. Stahr, Judge.

F. B. Martin for appellants.

R. A. Roberts and Robert E. Webb for appellees.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER —Affirming.

This is an appeal from a judgment of the Graves Circuit Court construing the will of J. I. Palmer, deceased. The will and its codicil read:

"I, J. I. Palmer, of Sedalia, Graves County, Kentucky, being of full age and sound in mind, make and publish and declare this to be my last will and testament, hereby revoking a will which I made on the 12th day of July, 1938, and not only revoking that will but

any and all others heretofore made, and I declare this to be my last will and testament.

"1st: I direct that all my just debts and funeral expenses be paid out of my personal property, and out of any partnership real estate, if necessary, as soon as practical after my death.

"2nd: I hereby give and devise the places known as the Moffett and Woodson places in Magisterial District # 4, near Sedalia, Graves County, Kentucky, and said two places joining each other and one being of 55 acres and the other 60 acres, making a total of 115 acres, more or less, and the 40 acres known as my home place, together with all the household and kitchen furniture in said places and all farming implements and appurtenances on said places to Stella Lawson, provided that I here and now charge the said places with a maintenance and support for my brother, Ernest Palmer, which includes a home, that is a residence, clothing, food and the necessary medical aid and for pin money for him for and during his life. And provided further that the said Stella Lawson is to provide a home for Oma Buckingham for and during her natural life and the three places above named are charged with her support, which means a home, clothing, food and the necessary medical expenses and pin money.

"3rd: I hereby will and devise in trust to Jessie Harris, R. L. Lawson and Norman McGee, as Executors and also as Trustees, for the use and benefit of my nieces and nephews, to-wit Jessie Harris, Almon Harris, Katie Mae Hunt, Nellie Stokes, Martha Webb, James Harris, Rebecca McGee, Love Harris Lookofsky, Wilbur Buckingham and Irving P. Buckingham, Gilbert Buckingham, and Jack Buckingham, all of my real estate which I own in the State of Tennessee, in my individual name, (not including partnership real estate), and said property is willed to my executors and trustees for the sole use and benefit of the children of my said nieces and nephews above named, and the trustees mentioned will keep on said land and farms a herd of cattle, 40 head of cattle, brood cows, and which are now on the place, and then from six to ten brood sows, from 20 to 40 head of sheep, and included in this *bequeast* in the cattle, hogs and sheep which are now on

the place and the trustees will sell the increase and out of the profits of the livestock and farming operations they will pay taxes, insurance and the necessary running expenses, and insurance on the buildings on said place, and then the profits to be divided among the children of my nephews and nieces as above set out. Provided that the trustees may employ a foreman if, in their judgment, it should be done to run said farming operations, however, the trustees may personally supervise the same if they so desire, but in any event they are to control the policy of the farming and livestock business. And provided further, that this trust shall continue until the youngest child of my nephews and nieces reaches the age of thirty years, and that means whether the children are born before or after my death. This trust is to continue until the youngest one reaches the age of thirty years. Provided the 66 acres, more or less, that I own and which is located near Hazel, Kentucky, but the land is in Tennessee, and in Henry County, and this is excepted from the said trust above set out and will be disposed of hereafter. Provided further that all of my land owned individually in Tennessee, with the exception of the 66 acres located near Hazel, Kentucky, Henry County, Tennessee, is to be divided, or sold for division, is to be divided among the children of my nephews and nieces above set out.

"I further will and direct that all the personal property located upon the real estate owned by me individually in the State of Tennessee, at the time of my death, is included with the real estate and the same is to remain on the farm, including household and kitchen furniture, livestock of every kind, and they are to go to my nieces and nephews, including the farming implements and all personal property of whatever kind or nature, located upon the said farms, and the same to be used by the Trustees in the operation of the farming and livestock carried on on said farms.

"My said Tennessee farms are operated by R. L. Lawson and myself and the said Lawson is entitled to one-half of the profits and to pay one-half of the expenses and at my death he is to have his part after the deduction of the expenses, and provided that I own the brood cows and the brood sows and the brood sheep,

and that the said Lawson is simply entitled to one-half of that which is grown on the farms and which include corn, cotton, tobacco, and in fact, all profits from the farms.

"4th: I further will that at my death that about 234 acres near Lowes, in Graves County, Kentucky and also 40 acres, at Lowes, Kentucky, which lies just across the road from the 234 acres, and also $53\frac{1}{2}$ acres, near Sedalia, Kentucky, which is known as the Smith place, be given to my executors and trustees and they are given the power to run the said farms and operate them, in their best judgment, and they are given the power to sell and convey the same and make warranty deeds and they may have ten years to do so, and this is left entirely to their best business judgment, and when they do sell it then it shall be divided between my brothers and sisters, to wit-L. B. Palmer, Ernest Palmer, Oma Buckingham and Ula Harris, and provided further that the rents or profits, of these farms accruing before the sale thereof, is to be paid to my brothers and sisters as above set out, share and share alike.

"5th: Mr. Estell France and Mrs. Lattie France, husband and wife, are now living on a farm belonging to me, of about 66 acres, more or less, and located in Henry County, Tennessee, in the 15th Civil District and $1\frac{1}{2}$ miles from Hazel, Kentucky, and due West of the railroad, and I will and devise the said land to Estell France and Mrs. Lattie France for and during their natural lives with the remainder over to the children of my nieces and nephews heretofore set out. However, the said Estell and Mrs. Lattie France are to live on and have this farm during their lives but they are required to pay the taxes and to keep it in a reasonable fair condition and keep the buildings and fences in reasonable repair, and out of the profits the necessary expenses in maintaining this place must be paid, and if they should fail, then I hereby give my executors the authority to take such steps to do what they think is necessary to see that the place is kept in reasonable repair.

"6th: I own partnership property including farm lands in Kentucky and Tennessee, and city property

in Paducah, Kentucky and in the City of Paris, Tennessee, I hereby will and devise that all of such property that I may own at my death be sold by my executors within ten years from the date of my death and this applies simply to partnership property, the date of sale to be left to the good business judgment of my executors and they are given full power and authority to sell at public or private sale this property and to make general warranty deeds to the real estate of said partnership property and I devise the proceeds thereof to my nephews and nieces as follows: Jessie Harris, Almond Harris, Katie Mae Hunt, Nellie Stokes, Martha Webb, James Harris, Rebecca McGee, Love Harris Lookofsky, Wilber Buckingham, Gilbert Buckingham, Irwin P. Buckingham, and Jack Buckingham and until said property is sold my executors will keep said property in good repair and rent out or farm the same and from the proceeds of said sale or farming operations they pay the expenses necessary for operating the same and the net proceeds of said rentals or farming operation to be equally divided between my nephews and nieces above named.

"7th: I own an interest in a garage in Paris, Tennessee, and A. C. Pickard and myself own 54% and I own 2/3 of this 54%, of this Garage and the Porter Heirs of Paris, own the other 46%, and this is a good piece of property and my executors are given the power to sell the same when they think best in their judgment, or they are given the power to buy the 46% if in their judgment that is the best thing to be done. And during the meantime, it is to be run as it is now, and the same is willed to my nieces and nephews, provided that the executors may run it on or may sell it out, and if it is sold, together with whatever rentals that may have accrued, the same is to be divided among my nephews and nieces as above set out, and the same is to be closed out in ten years.

"8th: All other property, not heretofore disposed of, I give and bequeath to my brothers and sisters, L. B. Palmer, Ernest Palmer, Oma Buckingham and Ula Harris, they are to share equally and if one should die, leaving children, then the children to represent their parents in the disposition of this property.

"I hereby nominate and appoint R. L. Lawson, Jessie Harris and Norman McGee as executors and also as testamentary trustees, and they are not required to give bond either as executors or as trustees and they are excused from filing an inventory or making a settlement and they are excused from making any report to any Court. I do this because I have faith in these men that they will do the right thing.

"My executors will erect a suitable monument to my grave.

"This the 6 day of November, 1941.

"(Signed)  J. I. Palmer
"Codicil

"I J. I. Palmer make and publish this as a codicil to my will heretofore made on the 6th day of November, 1941, and which will is now ratified with the following amendments thereto;

"I.  In the second paragraph of my will, I disposed of two farms in the 4th Magisterial district, near Sedalia, in Graves County, Kentucky, being the Moffett and Woodson places, containing 55 and 60 acres respect*fully*, and gave the same to Stella Lawson, with certain charges on the farms. I here and now cancel said bequest, for the reason that, I have other plans, and do not desire to dispose of said farms in the manner set out in the second paragraph of my will.

"II.  In the second paragraph of my will, I gave to Stella Lawson, 40 acres of land known as my home place, together with all of the household and kitchen furniture in said places and all farming implements and appurtenances on said place, and charges said place with certain charges. I here and now cancel said bequest, for the reason that I have other plans.

"III.  I hereby give and devise to Stella Lawson, the 40 acres of land known as my home place, together with all the household and kitchen furniture in said place and all farming implements and appurtenances on said place, upon the following conditions and terms to-wit: Provided that my brother Ernest Palmer should be living at my death, then the above 40 acre farm shall go to Stella Lawson and I here and now

charge said farm with the maintenance and support for my brother Ernest Palmer, which includes a home, that is a residence, clothing, food and the necessary medical aid that may be necessary and pin money for him during his life; Provided further that if my brother Ernest Palmer should die before I do, then this bequest is to become null and void and the said 40 acre is to remain the property of my estate and not to go to the said Stella Lawson.

"IV. In the 3rd paragraph of my will, I nominated Norman McGee as one of my executors and also as Trustee. I here and now cancel said nomination in as far as Norman McGee is concerned, leaving as Executors and Trustees Jessie Harris and R. L. Lawson.

"V. In the 8th, paragraph of my will, I nominated Norman McGee as one of my executors and also as one of my Testamentary Trustees, and I here and now cancel said nomination in as far as it concerns Norman McGee, leaving only Jessie Harris and R. L. Lawson as executors and Testamentary Trustees.

"This 21 day of December, 1945.

"(Signed)   J. I. Palmer"

We have concluded the Chancellor erroneously took jurisdiction of two of the questions presented. We have omitted the portion of his opinion which deals with these questions and, as modified, we will adopt his opinion as our own. Following the Chancellor's opinion we will present our views in respect to his and our right to entertain jurisdiction of the questions referred to.

"This is an action under the Declaratory Judgment Act by the Executors and Trustees of the estate of J. I. Palmer, deceased, and their wives, to construe his will and determine the validity of a trust created by the will and a definition of the rights and duties of the Executors-Trustees.

"J. I. Palmer died testate, a resident of Graves County, Kentucky, on April 18, 1946, leaving an estate consisting of:

"(1)  Individual personal property in the amount of $4,165.18, in addition to household goods;

"(2)  Individually owned real estate in Kentucky, consisting of 40 acres known as the homeplace, 53 acres known as the Smith place and 115 acres known as the Moffett and Woodson places;

"(3)  Individually owned real estate in Tennessee, consisting of about 1,285 acres, and

"(4)  Partnership personal property in Kentucky and Tennessee, consisting of livestock, farm implements and 198 acres of partnership real estate in Tennessee.

"The will consisting of eight (8) clauses and a codicil, is set out in full in the petition.  A Warning Order Attorney and Guardian ad Litem were appointed and their reports and answers and plaintiffs' response to same constitute the only other pleadings.

"During the progress of the trial proof was heard in the form of the testimony of R. L. Lawson and Robert E. Webb.

"Jurisdiction of this Court to construe the will and determine matters affecting the real estate in Tennessee were questioned by both the Warning Order Attorney and the Guardian ad Litem.

"The general rule as to jurisdiction seems to be that, where the laws of different jurisdictions are involved in the construction and interpretation of a will, the construction and proper interpretation of ascertaining the testator's meaning and intention as expressed therein are governed by the law of the testator's domicile, unless the circumstances under which the will was executed, or the language of the will as a whole, show that the testator had in mind the law of another jurisdiction, so far as it concerns the ascertainment of the testator's intention, this rule applies even though the will disposes of real estate.  But, the operative effect of the will, and the rights of the parties thereunder, as to personalty, are governed by the law of testator's domicile at the time of his death and as to the disposition of real estate, or the creation of any interest therein, by the law of the place where the property is situated. Cyc. Volume 40, 482; Dannelli v. (Dannelli's Adm'r),

4 Bush 51; Radford v. Fidelity & Columbia Trust Co. (185 Ky. 453), 215 S. W. (285), 286.

"I, therefore, conclude that this Court has jurisdiction to construe the will of J. I. Palmer, deceased, relating to his intentions as expressed therein, the meaning of the language used by him, its legal effect, and to make a complete determination of the rights of the parties relative to his personal property regardless of its situs and relative to real estate situated in the State of Kentucky.

"In order to simplify and make this opinion more readily understandable I will take up the sections of the will in the numerical order, and in so doing I find:

"Section 1 provides for payment of just debts and funeral expenses out of 'my personal property and out of any partnership real estate, if necessary, * * *.' I construe this to mean and direct that the Executors should pay debts first, from individually owned personal property, including crops growing on the Kentucky land and which may be severed prior to December 31, 1946. I take this view because the partnership property is specifically devised. Second, from partnership real estate and third, from the 115 acres of real estate in Kentucky not specifically devised and left to pass under the residuary clause of the will.

"It appears from statements of the parties that the above specified property will be more than ample to pay debts and costs of administration.

"Section 2 of the will was completely revoked and set aside by the codicil probated with the will and I, therefore, do not further consider Section 2.

"Section 3 is confusing and there seems to be some uncertainty of parties * * *. The language of this Section seems to first devise the lands individually owned in the State of Tennessee in trust to the Executors and Trustees for the use and benefit of twelve (12) nieces and nephews therein named, but later specifies that it is devised to his Executors and Trustees for the sole use and benefit of the children of the named nieces and nephews and again provides that the profits be divided among the children of his nieces and nephews and still further in the same paragraph it is stated:

" 'Provided further that all of my land owned individually in Tennessee, with the exception of the 66 acres located near Hazel, Kentucky, Henry County, Tennessee, is to be divided, or sold for division, is to be divided among the children of my nephews and nieces above set out.'

"In view of the language used it is my opinion that testator had in mind, and so expressed, that his lands individually owned in the State of Tennessee should ultimately pass to the children of his twelve nieces and nephews therein named and not to the nieces and nephews so named.

*    *    *    *    *    *

"It is further provided in said 3d paragraph that the Trustees should keep certain livestock on the land and sell the increase therefrom and use the income or profits from the livestock and farming operations to pay operating expenses, taxes and insurance and divide the profits among the children of his nieces and nephews. However, in the same section it is provided:

" '* * * all the personal property located upon the real estate owned by me individually in the State of Tennessee at the time of my death, is included with the real estate and the same is to remain on the farm, including household and kitchen furniture, livestock of every kind, and they are to go to my nieces and nephews * * *.'

"It is my opinion that it was the intention of the testator, and the same is so expressed in the will, that the (any) individually owned personal property on this land should pass to the twelve nieces and nephews, but the personal property located upon the real estate was partnership property which passed to the nieces and nephews named under Section 6 and the testator did not own any individual personal property that was located upon the real estate to pass under this devise. It is, therefore, unnecessary to give further consideration to this clause.

"Section 4 devises 234 acres, 40 acres and 53½ acres of land in Kentucky to his Executors and Trustees for the use and benefit of his brothers and sisters, L. B. Palmer, Ernest Palmer, Oma Buckingham and Ula

Harris, together with rents or profits before sale thereof. However, R. L. Lawson testified that he was familiar with the land owned by testator and that during his lifetime the testator sold the 234 acres and the 40 acres and that of the land described in this Section of the will only the 53½ acres belonged to the testator at the time of his death. There appears to be no controversy or doubt as to the provisions of this Section and that the 53½ acres pass to the executors and trustees to sell the same within ten years and divide the proceeds between the named brothers and sisters.

"Section 5 devises a life interest to Mr. Estell France and Mrs. Lattie France in 66 acres of land in Henry County, Tennessee, with the remainder over to the children of the named nieces and nephews set out in Clause 3 and it appears there is no doubt as to what testator meant and, therefore, construction or advice is not necessary concerning the same.

"Section 6 deals with partnership property, including farm lands in Kentucky and Tennessee. This is given to the twelve nieces and nephews therein named, which are the same as have been named in other sections of the will. R. L. Lawson testified that the city property in Paducah, Kentucky, and in Paris, Tennessee, was disposed of by the testator during his lifetime. It is my opinion that by 'partnership property including farm land in Kentucky and Tennessee,' the testator meant personal property as well as real estate, and that such property as he owned at the time of his death in partnership with other person or persons passed under this clause of his will to the named nieces and nephews and must be sold by the Executors within a period of ten (10) years and the proceeds divided equally between said parties.

"Section 7 deals with a garage in Paris, Tennessee, and R. L. Lawson testified that the testator prior to his death disposed of this property.

"Section 8 of the said will is the residuary clause and it was evidently the intention of the testator and he so expressed in said Section that all property not specifically devised passed to his brothers and sisters named therein, viz.: L. B. Palmer, Ernest Palmer, Oma

Buckingham and Ula Harris to share equally. There seems to be no question concerning this property, except that raised by the Guardian ad Litem for Gregg Palmer, who was also a brother of the decedent. I think the intention of the testator, as shown by his will, was to leave Gregg Palmer completely out of his bounty. Of course, if the testator died intestate as to any of his property Gregg Palmer would take an undivided interest in same, but with specific reference to the 60 acres and 55 acres of land in Graves County which the Guardian ad Litem claims was undevised the same passed under this Section 8 to the named brothers and sisters of which Gregg Palmer was not one.

"The codicil to testator's will, after cancelling Section 2 of his original will, gave Stella Lawson 40 acres known as the homeplace and which is located in Graves County, Kentucky, providing that Ernest Palmer was living at the time of testator's death. It is shown by the record that Ernest Palmer was living, since he has been summoned as a party to the action. She was also required to furnish him a home and certain support for the remainder of his life. The land, of course, is impressed with a lien to secure such performance by the devisee.

"This Section of the codicil also gives to Stella Lawson the household and kitchen furniture in said place and all farming implements and appurtenances on said place. The question has been raised as to whether or not the farming implements, which R. L. Lawson testified were partnership property, passed to Stella Lawson under the provisions of this codicil or passed to the twelve named nieces and nephews as partnership property. The codicil being a revision of testator's will to the extent therein set out, it is my opinion Stella Lawson takes the farming implements under this Section of the codicil of testator's will."

In that portion of the opinion which we have stricken the Chancellor declared that the trust created in Clause 3 of the will, the corpus of which consisted solely of real property located in the State of Tennessee, failed because it violated the rule against perpetuities of both Tennessee and Kentucky, and that the children born and to be born to the nieces and nephews after the testa-

248

tor's death under the laws of Tennessee were incapable of taking under this devise. In Middleton's Trustee v. Middleton et al., 172 Ky. 826, 189 S. W. 1133, 1134, the Court was asked to construe a deed of trust which conveyed to the trust estate real property located in Mississippi, it being contended by two of the children of the creator of the trust that their interest in the trust estate was free of the trust and they were entitled to be declared the owners of the fee simple title to their portion of the property placed in trust by the deed. The Court said:

"We do not understand, however, that the title to these Mississippi lands is to be determined according to the law of Kentucky, or by a Kentucky tribunal. It is elementary that the law of the state where the land is situated governs the construction of a deed, in so far as it determines the title or interest that one takes thereunder. (Citations follow.) * * *

"The circuit court being without jurisdiction to determine what interest the appellees took in the Mississippi lands, the judgment is reversed * * *."

Both the question as to violation of the laws in respect to the restraint on alienation of property and the question as to which members of a class may validly take title to the property in the devise affect the title to and quality of estate in real property in Tennessee. If the courts of one state could becloud the title to real property in another, a purchaser of property would be required to search the records of every state in the Union to assure himself of a clear title. As the Chancellor observed, Kentucky courts may determine the intention of a testator domiciled within their jurisdiction; but as to whether such intention renders the devise of real property situate in a sister state void in whole or in part is a question which can be determined only by the tribunals of the state in which the property is located.

On return of the case the judgment will be modified to the extent indicated and, as modified, it will stand affirmed.