JENNIE McCOY EAGER *et al. v.* JOHN McCOY *et al.*

(*Knoxville.* September Term, 1920.)

1. **WILLS.** Testatrix held- to intend devise of rents and profits for life of survivor of three sons.

Under a will directing that at the end of twenty-five years, or at the death of the last of testatrix's three sons, all of the property devised in trust should be sold to the best advantage and the proceeds equally divided among grandchildren, *held* that testatrix intended to devise to her sons the rents and profits of the property therein mentioned during the terms of their natural lives and of the natural life of the survivor of such three sons. (*Post, pp.* 700, 701.)

2. **WILLS.** Presumption in favor of legatee or devisee.

In construing a will, the presumption is always in favor of the legatee or devisee. (*Post, pp.* 701, 702.)

3. **WILLS.** Life estates not limited by subsequent ambiguous language.

Where life estates are conferred by clear and unambiguous language, doubtful language in another portion of the will will not be allowed to cut down such estates to estates for years. (*Post, pp.* 701, 702.)

Case cited and distinguished: Meachem v. Graham, 98 Tenn., 190.

4. **WILLS.** Grandchildren living at testator's death held entitled to rents and profits for minimum of twenty-five years.

A will directing executor to divide certain rents equally among grandchildren living at the time of testatrix's death, the renting and division of rents to continue for a period of twenty-five years after her death or until the last of her three sons died, *held* to devise such rents and profits to the grandchildren living at testatrix's death for twenty-five years, or until the death of the last son if he should survive the twenty-five year period. (*Post, p.* 702, 703.)

5. **PERPETUITIES.** Interest beginning within limits of rule against perpetuities.

Where interests of grandchildren devised are subject to contingencies, but all these events must happen and the various classes be determined within lives in being at the death of testatrix, such interests begin within the limits of the rule against perpetuities. (*Post, p.* 703.)

6. **PERPETUITIES.** Executory limitations must vest interest within what time.

Executory limitations in wills, whether of real or personal estate, in order to be valid, must vest in interest if at all within a life or lives in being and twenty-one years and a fraction thereafter for the term of gestation in cases of posthumous birth. (*Post, p.* 703.)

Cases cited and approved: Franklin v. Armfield, 34 Tenn., 306; Bramlet v. Bates, 33 Tenn., 554; Booker v. Booker, 24 Tenn., 505; Davis v. Williams, 85 Tenn., 646; Brown v. Brown, 86 Tenn., 277.

7. **PERPETUITIES.** Must look to common law for proper meaning of term in Constitution.

Although Constitution, article 1, section 22, declares that perpetuities are contrary to the genius of a free State and shall not be allowed, it does not define perpetuities, and the courts must look to the common law for the proper meaning of the term. (*Post, p.* 704.)

Constitution cited and construed. Art. 1, sec. 22.

8. **PERPETUITIES.** Estate need not only begin within limits regardless of end.

It is well settled at common law that the rule against perpetuities is not offended if an estate begins within the limits of the rule, regardless of the time at which such estate may end, and an interest is not obnoxious to the rule if it begins within lives in being and twenty-one years, although it may end beyond them. (*Post, p.* 704.)

9. **PERPETUITIES.** Rule against applies to trust estates.

The rule against perpetuities applies with equal force to trust estates, but a trust estate, beginning within the limits of the rule, is good, notwithstanding its prolongation. (*Post, pp.* 704, 705.)

10. **PERPETUITIES.** Invalidity of provision for remoteness held not to affect rights of remaindermen.

Under a clause of a will, "I direct that at the end of said period of twenty-five years or at the death of the last of my said three sons as the case may be all of my said property shall be sold to the best advantage, publicly or privately in the discretion of my executor . . . and the proceeds shall be equally divided among my grandchildren as a class who are living at the time of the death of the last survivor of said three sons," the power of sale or trust for sale conferred upon the executor, to be exercised not less than twenty-five years after the testator's death, is void for remoteness, but the class of grandchildren, being clearly designated to have the entire property, cannot be deprived of the estate merely because the machinery which the testatrix provided for a division of the property among them turns out to be ineffective, and the grandchildren may claim the estate and waive the sale altogether after death of the last son. (*Post, pp.* 705, 706.)

11. **PERPETUITIES.** Testator cannot confer power to vest title beyond limits of rule against perpetuities.

A testator cannot vest title to property at a period beyond the limits of the rule against perpetuities, nor can he confer upon another power to vest title at such a time. (*Post, p.* 706.)

Cases cited and approved: Chambers v. Preston, 137 Tenn., 324; Wayne v. Fouts, 108 Tenn., 145; Goodier v. Edmunds, 3 Ch., 455. Cases cited and distinguished: Goodier v. Johnson, 18 Ch. D., 441; In Re Daveron, 3 Ch., 421; In Re Appleby, 1 Ch., 565;

12. **WILLS.** Clause as to rights of grandchildren on death construed to apply only to grandchildren living at death of testatrix.

A clause in a will, "I further direct that while said rent period is running that if any one or more of my grandchildren shall die, the remaining grandchildren shall receive all of said rents and

profits," *held* to apply only to grandchildren living at testatrix's death, and not those who came into being after her death. (*Post. pp.* 710, 711.)

ON PETITION TO REHEAR.

13. **WILLS.** Law favors vesting of estates.

The law favors the vesting of estates created by will. (*Post, pp.* 711, 712.)

---

FROM KNOX.

---

Appeal from the Chancery Court of Knox County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—HON. HUGH M. TATE, Chancellor.

PARIS A. HAYNES and CANTRELL, MEACHAM & MOORE, for appellants.

FRANTZ, McCONNELL & SEYMOUR, AYRES & BROUGHTON and GREEN & WEBB, for appellees.

MR. JUSTICE GREEN delivered the opinion of the Court.

This bill was filed by one of the heirs of Mrs. Elizabeth Haynes to construe her will and have it set aside as providing a disposition of her real estate contrary to the rule against perpetuities. The chancellor upheld the will and the complainant appealed to the court of civil appeals where the chancellor's decree was affirmed. The case was brought to this court by petition for *certiorari*, and it has been elaborately argued here.

Although the will was sustained by both the lower courts the executor is not satisfied with the construction thereof adopted by said courts, and has filed a petition for *certiorari,* and we will first dispose of the question raised by him.

It is not possible to understand the case without a consideration of the whole will, and we, therefore, set out the entire instrument in the margin.

### [1]WILL.

"I, Elizabeth Haynes, a citizen of Knoxville, Tennessee, being of sound mind and memory, but somewhat advanced in years, hereby make and publish this my last will and testament.

"1. At my death I want my just debts all paid, and my funeral expenses paid as speedily as may be convenient to my executor hereinafter named.

"2. I will and devise to my three sons, John McCoy, W. C. McCoy, and S. G. Haynes the rents and profits of my three houses and lots, that is business houses including the ground on Gay street, west side, in Knoxville, Tennessee, and to the survivor of them for and during the terms of their natural lives and of the natural life of the last survivor of said three sons, Said houses and lots are now rented to Miller Brothers. One of said houses being adjoining Miller Brothers on the west side of Gay street between Union and Wall streets. The other two houses adjoin each other and are on the west side of Gay street. My said three sons shall be entitled to have and enjoy the rents and profits of said houses during their natural lives, and on the death of any one of said sons the two survivors shall have all of said rents and profits, and on the death of a second of said sons, the remaining surviving son shall have the entire rents and profits of said houses during the term of his natural life. At the death of the last survivor of said three sons, the rents and profits of said three houses shall be paid in equal parts to all of my grandchildren living at that

time, and for the period of time provided for in item four of this will.

"3.   I will and devise to my son John McCoy the rents and profits of the Haynes House, on the east side of Prince street, in Knoxville, Tennessee, in the Sixth ward thereof, for and during the term of his natural life.   At the death of the said John McCoy, said rents and profits shall be paid in equal parts to all of my grandchildren living at that time and for the period of time provided for in item four of this will.

"4.   Out of the remainder of my property I direct my executor to pay my debts and funeral expenses as herein before provided, rent and collect the rent of said remaining property and divide said rents equally among all of my grandchildren living at the time of my death. This renting and division of rents shall continue for a period of twenty-five years after my death, or until the last of my said three sons shall have died.   After the last of my said three sons is dead the rents in the second item of this will shall be divided as provided in this item four, and if the said John McCoy shall die within the said period of twenty-five years, then the rents of the Haynes House shall be divided as provided in this item four of my will.

"I further direct that at th eend of said period of twenty-five years, or at the death of the last of my said three sons, as he case may be, all of my said propery shall be sold to the best advantage, publicly or privately, in the discretion of my executor, and for the best price obtainable, and the proceeds shall be equally divided among my grandchildren as a class who are living at the time of the death of the last survivor of said three sons.

"I further direct that at the end of said period of twenty-five years, one or more of my grandchildren, shall die, the remaining grandchildren shall receive all of said rents and profits.

"5.   I further direct that at my death all my personal property shall be sold and converted into money, and the proceeds thus arising shall be used in the first place, as a fund out of which to pay debts and expenses.   Any surplus arising from the sale of personal property, including money on hands, after payment of debts and funeral expenses, and expenses of administration, shall be divided equally among my grandchildren living at my death.

"6. I nominate my grandson, William J. McCoy, son of John Mc-Coy and being my oldest grandchild, as sole executor of this will, and trustee under the same vesting title in him during the period of time, and for the purposes set out in this will and charge him with the duty of executing the same.

"He is to rent the property and collect the rents, keep up repairs, pay insurance and taxes, and any incidental expenses which may accrue which he may find necessary. For his services I direct him to retain $10 per month out of the gross receipts and he will divide the net rental derived from the said several classes of property, as hereinbefore directed. He shall be excused from giving bond as I have full confidence in his honesty and fidelity.

"In testimony of all which I hereunto subscribe my name in the presence of two witnesses, who sign as witnesses at my request and in my presence, and in each other's presence, on this 16th, day of July 1909.                                                   ELIZABETH HAYNES.

"JEROME TEMPLETON,
"ERNEST D. FRITTS,
     "Witnesses."

The lower courts were of opinion that the twenty-five-year period referred to in item 4 of the will was the minimum period at which the land might be sold. The executor insists that twenty-five years is the maximum period for which the sons of the testatrix may enjoy the property, and that it must be sold for distribution at the end of twenty-five years, whether all the sons are dead at that time or not.

We think this contention of the executor must be overruled. It is very clear from item 2 of the will that the testatrix intended to devise to her three sons, John McCoy, W. C. McCoy, and J. S. Haynes, the rents and profits of the property therein mentioned during the terms of their

natural lives, and of the natural life of the survivor of said three sons. It is equally clear that she intended her son John McCoy to have the rents and profits of the property mentioned in item 3 of the will for and during the term of his natural life.

In construing a will the presumption is always in favor of the legatee or devisee. Moreover, the life estates were conferred by clear and unambiguous language, and doubtful language in another portion of the will will not be allowed to cut down these estates, clearly granted for life, to estates for years. This is the rule with respect to an estate granted in fee in a will which later expresses supposed terms of limitation in language which is not clear. *Meachem* v. *Graham*, 98 Tenn., 190, 39 S. W., 12. A like rule should be applied in the case before us.

In addition to this there is a provision in item 2 of the will that—"At the death of the last survivor of said three sons, the rents and profits of said three houses shall be paid in equal parts to all of my grandchildren living at that time, and for the period of time provided for in item 4 of this will."

This shows beyond controversy that the testatrix contemplated that there might be a period of time between the death of her last son and the expiration of the twenty-five-year period provided for in item 4. She did not therefore intend for the property to be sold on the death of her last son, unless he out-lived the twenty-five-year period. She did not intend the interest of any son to be cut off before his death.

Eager v. McCoy.

It is altogether improbable that the testatrix, having provided an income for her sons' support, would have desired them to be deprived of such income in their old age at the expiration of the twenty-five-year period.

We, therefore, conclude that the twenty-five-year period was a minimum and not a maximum period for the sale of the land and the distribution of the proceeds under the terms of this will.

Several estates are created, or attempted to be created, by this will, and it will clarify the situation if we consider these estates separately, and test each one of them by the rule against perpetuities.

In addition to the estates created for the benefit of her sons just above mentioned, the testatrix provided that, after payment of certain expenses, her personal property should be divided equally among her grandchildren living at her death. No question is made upon this bequest.

Disposing of the real estate not carried in items 2 and 3 of the will, the testatrix in item 4 directs her executor to rent and collect the rent of said property, and divide said rents equally among all of her grandchildren living at the time of her death, this renting and division of rents to continue for a period of twenty-five years, after her death or until the last of her three sons has died. Under our construction of the will this was a devise of the rents and profits from the real estate, not included in item 2 and item 3, to the grandchildren living at the death of testatrix for twenty-five years, or until the death of the last son, if he should survive the twenty-five-year period.

By item 2 of the will she devises the rents and profits of the real estate therein mentioned to her three sons for their lives and the life of the survivor of them, and upon the death of the survivor such rents and profits are to be paid in equal parts to all of the grandchildren living at that time until the expiration of the twenty-five-year period, if the surviving son dies within said period.

Item 3 of the will is a devise of the rents and profits of the real estate therein described to John McCoy for life and thereafter to the grandchildren living at the time of his death until the expiration of the period of twenty-five years, if he dies within said period.

The interests of the grandchildren in the rents devised in items 2 and 3 are subject to contingencies, but all these events must happen, and the various classes be determined within lives in being at the death of the testatrix. So that all the interests so far mentioned begin within the limits of the rule against perpetuities, including the estate of the trustee.

The rule against perpetuities has been considered in several of our cases, and it is, as announced therein, that executory limitations, whether of real or of personal estate, in order to be valid, must vest in interest, if at all, within a life or lives in being and twenty-one years and a fraction thereafter, for the term of gestation in cases of posthumous birth. *Franklin* v. *Armfield,* 34 Tenn. (2 Sneed), 306; *Bramlet* v. *Bates,* 33 Tenn. (1 Sneed), 554; *Booker* v. *Booker,* 24 Tenn. (5 Humph.), 505; *Davis* v. *Williams,* 85 Tenn., 646, 4 S. W., 8; *Brown* v. *Brown,* 86 Tenn., 277, 6 S. W., 869, 7 S. W., 640.

Although the Constitution of Tennessee (article 1, section 22) declares that perpetuities are contrary to the genius of a free State and shall not be allowed, the Constitution does not define perpetuities, and we must look to the common law for the proper meaning of the term. *Franklin* v. *Armfield, supra.*

It is well settled at common law that the rule against perpetuities is not offended if an estate begins within the limits of the rule, regardless of the time at which such estate may end.

"An interest is not obnoxious to the rule against perpetuities if it begins within lives in being and twenty-one years, although it may end beyond them. If it were otherwise, all fee-simple estates would be bad. The law is the same with lesser estates." Gray on the Rule against Perpetuities, section 232.

"The remoteness against which the rule is directed is remoteness in the commencement or first taking effect of limitations, and not in the cesser or determination of them.. An estate that is to arise within the prescribed period may be so limited as to be determined on the happening of any event, however remote." Lewis on Perpetuities, page 144.

It is true that the rule against perpetuities applies with equal force to trust estates (*Davis* v. *Williams, supra*), but since the trust estates heretofore considered begin within the limits of the rule, they are all good, when tested by that rule, notwithstanding their prolongation. Nothing to the contrary has been decided in any of our cases, although there are some chance expressions apparently in-

imical to this view. However, as shown by Mr. Gray and Mr. Lewis, there can be no doubt about the state of the common law on the subject.

This brings us to the consideration of the disposition which the testatrix attempts of the ulterior interest in her real estate.

Item 4 of the will contains the following direction:.

"I further direct that at the end of said period of twenty-five years, or at the death of the last of my said three sons, as the case may be, all of my said property shall be sold to the best advantage, publicly or privately, in the discretion of my executor, and for the best price obtainable, and the proceeds shall be equally divided among my grandchildren as a class who are living at the time of the death of the last survivor of said three sons."

This is the only disposition which the will undertakes of the proceeds of the real estate when sold. It is provided distinctly and without equivocation that the proceeds shall be equally divided among the grandchildren as a class who are living at the time of the death of the last survivor of the three sons. This language is too plain for any construction. Its force cannot be ignored.

It is insisted for the complainants that under the terms of the will the trustee is directed to sell this property at the end of the twenty-five-year period, and that the end of this period may very well turn out to be more that twenty-one years and ten months, after the close of all lives in being at the death of the testatrix. It is urged that the real estate is directed to be converted at this time by the

trustee and distributed as personalty among the grand-children. It is insisted that no conversion can take place earlier under the language of the will, and that the grand-children necessarily take the ultimate interest in this prop-erty as personalty and at a time beyond the limits of the rule against perpetuities.

It must be conceded, in our opinion, that the power of sale or trust for sale conferred upon the executor is void for remoteness. "If a power can be exercised at a time beyond the limits of the rule against perpetuities it is bad." Gray on the Rule against Perpetuities, section 473.

This is true because a testator cannot vest title to prop-erty at a period beyond the limits of the rule, neither can he confer upon another the power to vest title at such a time.

Under the terms of the will before us, however, the grandchildren living at the death of the last survivor of the three sons take the entire beneficial interest in this real estate, subject, it may be, to the trusts heretofore re-ferred to. The class of grandchildren who take this ulti-mate interest is by the terms of the will closed at the death of the last of the three sons.

Since this class of grandchildren are clearly designated by the testatrix to have the entire property, they cannot be deprived of the estate merely because the machinery which the testatrix provided for a division of the prop-erty among them turns out to be ineffective.

The said class of grandchildren are entitled under the doctrine of reconversion upon the death of the last son to

say to the trustee that they will take the property as real estate and waive the sale altogether. *Chambers* v. *Preston,* 137 Tenn., 324, 193 S. W., 109, Ann. Cas., 1918B, 428; *Wayne* v. *Fouts,* 108 Tenn., 145, 65 S. W., 471. This question has been before the English courts frequently of late years.

In *Goodier* v. *Johnson,* 18 Ch. D., 441, a trust for sale was bad because not limited to take effect in the time allowed by the rule against perpetuities. In disposing of the case Sir GEO. JESSEL said:

"But there is a trust of the property and the rents and profits thereof until sale, for the persons to whom the proceeds of sale are bequeathed, and if the trust for sale is bad, still that trust is good and will carry the property to them."

*In Re Daveron* (1893), 3 Ch., 421, a testator devised a freehold estate to trustees subject to a lease which had forty-nine years to run. The trustees were to pay the rent as long as the lease ran to certain persons, and upon the expiration of the lease the property was to be sold and the proceeds were to be divided among other named persons, who could be ascertained within the limits of the perpetuity rule. In disposing of this case, CHITTY, J., said:

"Now comes the question whether I can give effect to the testator's intention, seeing that he has directed a sale, and his directions as to the sale are invalid. It is plain that the trust to sell and pay the proceeds to A. (a named person) confers an equity on A, and gives him the whole

beneficial title which the testator is entitled to in fee simple. In equity A. is the beneficial owner, and A. can come to the trustees and say, 'I desire you not to sell, but to convey the estate to me.' About that there is no question. It is equally plain that if there is a direction to sell and to pay the proceeds in shares to A., B., and C., then A., B., and C. are regarded, in equity, also as the owners of the estate. They can, by the doctrine of election, prevent any sale taking place, and, if they all express their intention, the trustee could lawfully convey the estate to them in the shares in which they are entitled to the purchase money. The difference between the cases I have put of the proceeds going to one person or the proceeds going to several consists in this: That where there are several they must all concur to stop the sale. I mention these points to show how equity regards the substance of the matter and considers those beneficially entitled to the purchase money as entitled to the estate itself."

It was held that the ultimate beneficiaries named in the will were entitled to take the property as real estate.

A conclusion exactly similar was reached in *Re Appleby* (1903), 1 Ch., 565, on the authority of the previous cases. This case was decided by BYRNE, J., and on appeal his decision was affirmed by the court of appeal. It was shown in this case that it made no difference that the rents of the property, prior to the time of the sale directed, went to parties other than the ultimate beneficiaries of the proceeds of the sale. The court found there was a clear intention in the will to benefit particular persons, ascertainable with-

in the limits of the rule, but the sale directed was too remote, saying:

"That being the intention of the will, there is simply the failure of a piece of machinery, which, if it had been effectual, might have enabled them to take it in different shape. As it is, the intention stands, it is unaffected by the failure of the power of sale, and the persons entitled to it take it in the form in which it now is, without going through the process of a sale."

A like conclusion was reached in *Goodier* v. *Edmunds* (1893), 3 Ch., 455. This was the same will that was construed in *Goodier* v. *Johnson, supra.*

So under these authorities we think that the grandchildren living at the death of the last of the sons of testatrix are entitled to the real estate, subject to the trusts heretofore mentioned. The trust for sale is bad, but the said grandchildren are entitled to take this real estate as real estate at the time mentioned.

We have considered the various authorities relied on by counsel for the complainant. Lack of space, however, prevents a detailed discussion of them. We think the will before us does not offend against the perpetuity rule, and that the said will is accordingly valid. In so far as the cases referred to by complainant conflict with the foregoing, we are unwilling to follow them. Local statutes are responsible for most of such conflict. The common law prevails in Tennessee, and we believe is correctly applied herein.

At the conclusion of item 4 of the will is the following: "I further direct that while said rent period is running that if any one or more of my grandchildren shall die, the remaining grandchildren shall receive all of said rents and profits."

We should observe that we think this limitation only refers to the immediate devise of the "remaining property" contained in item 4 to that class of grandchildren living at the death of the testatrix. This devise is necessarily to a diminishing class, by force of the language used. "Remaining grandchildren" could not include grandchildren, who came into being after the death of the testatrix, who might be included in the classes designated in item 2 and item 3.

If we construed "remaining grandchildren" in this item to mean all the grandchildren of all classes who remained after the death of any one who died at any time while the rent period was running, it would result in a disposition of the rents not contemplated by testatrix, and confuse the three classes of grandchildren, which classes have been carefully kept separate in separate items of the will. So we think the limitation not a general limitation applicable to the gifts to the three classes of grandchildren, but that it only applies to the gift to the class living at testatrix's death.

There are no limitations on the remainder of the terms, vesting in the classes of grandchildren created in items 2 and 3, after the deaths of the prior takers of said terms. We could not transpose the limitation of item 4 above

quoted, and apply it separately to the estates granted in items 2 and 3, when clearly its scope was intended to be confined to the item in which it appeared.

Modified as herein indicated, the decree of the court of civil appeals is affirmed. We think the complainant has done the estate a service in procuring a construction of this will, and costs are taxed to the executor.

### ON PETITION TO REHEAR.

Upon reconsideration we are satisfied that we properly confined the limitation contained in the last paragraph of item 4 to the property devised in that item.

We cannot give the force to the third sentence in item 4 that counsel insists upon. In this sentence, reading it literally, it is said that the rents in the second item and the rents in the third item after the death of the life tenant "shall be divided as provided in this item 4." If we divided them as rents in item 4 are divided, it would be among the class of grandchildren living at the death of testatrix. It is obvious from the entire will that the testatrix had no such intention as this.

The remainder interests in the rents after the death of the life tenants are clearly given to the grandchildren living at the respective times of such deaths for the rest of the term in items 2 and 3. The presumption is always in favor of the legatee or devisee, and the law favors the vesting of estates. Bearing in mind these rules, we would not be justified in holding that the dubious language of item 4 imposed a limitation upon the estates vested in items 2 and 3.

Eager v. McCoy.

The reference to the doctrine of reconversion in our opinion, borrowed from the English cases, was by way of analogy. Strictly speaking, since the provision for conversion contained in the will is void, there is no necessity for a reconversion, and the property all the while retains its character as real estate. The parties merely take when their beneficial interest accrues, as they might in case of a reconversion.

The reference in the petition to rehear to the statute of uses doubtless arises from a misconception of our opinion, which adverse counsel apparently shared. We do not execute any of the trusts. We hold the trust for payment of rents good. Only the trust for sale is bad. This has been more clearly brought out in a decree prepared by the court and entered in the case.

We see no possible way to justify the contention that the court attempted to apply the doctrine of *cy pres*. This is not a charitable trust, and we undertook to carry out the wishes of the testatrix exactly, instead of approximating her desires.

Let the petition to rehear be overruled.