HAMILTON NATIONAL BANK, ADM'R, ETC., *v.* LEIB TOUR-
IANSKY *et al.*

(*Knoxville,* September Term, 1953.)

Opinion filed September 6, 1954.

246

WARREN W. KENNERLY, of Knoxville, for appellant guardian ad litem.

AMBROSE & WILSON, of Knoxville, for Intervening Petitioners.

H. H. McCAMPBELL, JR., and CREEKMORE & BUHL, all of Knoxville, for appellees.

Mr. Chief Justice Neil delivered the opinion of the Court.

The Hamilton National Bank as administrator, etc., has petitioned the Court for the writ of certiorari to review and reverse the decree of the Court of Appeals. The case presents many interesting points of view. Since we are persuaded to overrule the assignments of error and affirm the decree of the Court of Appeals we adopt the unusual course of setting out in full the opinion, and then will respond to the appropriate assignments of error.

Opinion by McAmis, Presiding Judge.

"This suit was filed by the Hamilton National Bank as Administrator C.T.A. of the estate of Gregory I. Tour, deceased, for instructions in the distribution of the estate.

"The bill named as defendants the known and unknown beneficiaries who were brought before the Court by publication notice. None appeared to defend but a guardian ad litem was named for the unknown beneficiaries and an answer was filed in their behalf. Pro confessos were taken against the known beneficiaries and, on the proof introduced by the Administrator C.T.A., a final decree was rendered directing payment of the entire fund amounting to approximately $60,000.00 to certain charitable trusts named in the will.

"The Chancellor's decree is based upon a finding that it is impractical and dangerous to the intended beneficiaries, to make further efforts to locate them, determine their identity and, if located and identified, to transmit the funds to them; that it would be futile to hold the funds for the period of five years as directed by the testator to enable the beneficiaries to claim the fund. The guardian ad litem has appealed and, after the transcript was filed in this court, a motion to intervene has been filed by reputable attorneys of the Knoxville Bar in behalf of a sister of the testator, said to be alive and residing in Russia, and who is named as a beneficiary in the will.

"Gregory I. Tour, a native of Russia, became a naturalized citizen of the United States on April 11, 1927. Thereafter, he moved from his home in Somerville, Massachusetts, to Knoxville, Tennessee, where he was employed by the Tennessee Valley Authority as an electrical engineer from 1936 to 1950

when he was retired at the age of 70. He died in Knoxville January 16, 1951, leaving a will by which he gave 5% of his estate to each of five designated charitable institutions. The will further provided that if testator's brothers and sisters or their issue could be located or should come to America to claim the fund in person or by legally appointed representative *within a period of five years after his death* seventy-five per cent of the fund should go to them; if not the entire estate should go to the charities named. We quote the pertinent language of the will:

" 'Inasmuch as all my brothers and sisters and their issue reside abroad, namely in Russia, I instruct my Executor to inform each one of them, as soon after my death as may be practicable, the approximate value of my estate and how much his or her share is in dollars payable in Boston, Massachusetts, and to give to each one the opportunity of deciding whether he or she wishes his or her said share sent to him or her, or whether he or she prefers to come to the United States of America and receive said share. In the event that any or all of them prefer to come to the United States of America or to send a legal representative to the United States of America for the purpose of receiving said shares, my Executor shall purchase transportation for those of them who request such purchase, and this expense shall be deducted from the shares of such ones.

" 'Following are some addresses of my brothers and sisters:

" '1. Leib Touriansky

Country: Russia; city Charkov

Street: Staro-Moscovskaya

House: #53; Apartment #19

" '2. Perlia Touriansky Rudman
   Country: Russia; City: Moscow
   Street: Sheremetevskaya
   House: #56; Apartment #3
" '3. Channa Novick
   Country: Russia; City;
   Dnepropetrovsk
   Street: Voroshilovskaya
   House #1; Apartment #37
" '4. Ida Chalfin c/1 A. Chalfin
   Country: Russia; City: Moscow
   Street: Zvetnoy Boulevard,
   Zyetnoy Pereulok
   House #1/5; Apartment #4

All these addresses of my brothers and sisters are known to me as of 1936 to 1939 and I am not certain whether they are up-to-date. I am giving them here only in order that my Executor may have a starting point for tracing out the correct addresses of all my brothers and sisters and their issue when necessary. During my lifetime I shall endeavor to supply my Executor with up-to-date addresses of my brothers and sisters and their issue whenever possible.

" 'If my Executor shall have been unable to make delivery of any share within five years from my death by reason of failure of any of the distributees hereinbefore named in subsection "f" to make his or her decision as aforesaid, then and in that event my Executor shall pay over the amount remaining in its hands to the institutions hereinbefore named in subsections "a", "b", "c", "d", & "e" or to the survivor or survivors of them in equal proportions.

" 'If none of the hereinbefore named institutions shall survive, my Executor shall at the termination

of the said five years pay over and distribute the amount remaining in its hands to such persons as would be my heirs-at-law under the laws of the Commonwealth of Massachusetts if I had then died intestate.'

"The proof shows that when the bill was filed the Clerk and Master mailed copies of the publication notice to the addresses set out in the will. None of the notices was returned; nor was any answer or acknowledgement received. The Administrator sought the advice and assistance of the Secretary of State of the United States and was advised that the existing Russian Government discouraged communication between the outside world and its citizens and it was suggested that attempts to communicate with Russian nationals might jeopardize their safety and welfare. Attempts to take the depositions of a cousin of the testator and of a childhood acquaintance living in New York were unsuccessful because of their refusal to testify, it is said, out of fear of reprisal. Whether the beneficiaries are living or dead is not shown.

"We cannot agree that, because these efforts during the first half of the period fixed by the testator have proved fruitless, it will be impossible to carry out the provisions of the will before the end of the period. He must have been familiar, at the time of his death in 1951, with the attitude of the Russian government regarding the ownership of private property as well as with the strained relationship existing between it and the Government of the United States. The resulting difficulties likely to be encountered by the Administrator of his estate and by his intended beneficiaries must have been known to

him. Yet, he permitted the will to remain unchanged until his death.

"If it should develop that the beneficiaries cannot be located and identified without jeopardizing their safety or that they cannot appear and claim the bequests within the period fixed by the will, the contingent beneficiaries will not be injured. On the other hand, if disbursement is made now, it will become impossible to effectuate the will of the testator in case the beneficiaries do find a way to claim the bequests. In view of the circumstances confronting the testator he deemed it advisable to fix a limited period for effecting a transfer to his beneficiaries. The fact that a waiting period of five years is mentioned twice in the will indicates deliberation.

"There is no showing that the Government of the United States prohibits the transfer of private funds to Russia but, if so, there remains the possibility that the beneficiaries may be able to claim the fund in person or through a legally appointed representative as provided in the will. In reality, the question is, who should fix the period during which distribution should be held in abeyance? The testator chose, with deliberation, to fix the period at five years and we think, in the absence of a showing of impossibility of performance during the remainder of the period, to cut short the period violates the clear intent and purpose of the will.

"The settled rule is that the intention of the testator, as gathered from the language of the will, must be given effect if it can be done without contravening some rule of property or some fixed rule of law or public policy. *Ratto* v. *Nashville Trust Co.,* 178 Tenn. 457, 159 S.W.2d 88, 141 A.L.R. 341; *Garner* v.

*Benton,* 187 Tenn. 34, 212 S.W.2d 890; *Nichols* v. *Todd,* 20 Tenn. App. 564, 101 S.W.2d 486; *American Nat. Bank & Trust Co.* v. *Mander,* 36 Tenn.App. 220, 253 S.W.2d 994.

"'It is argued, however, that in this case to attempt to disburse the fund to persons living in Russia might endanger their personal security and might result in the fund being converted by enemies of the United States. Since, in our view, the fund cannot be disbursed at present without violating the terms of the will and we cannot know what the circumstances will be when it is ready for distribution, we must leave to the sound judgment of the able Chancellor, at the proper time, whether the fund can be transmitted to the beneficiaries in such a way that they will benefit and not be injured in the process of getting it. We do not wish to be understood as placing any compulsion on the Chancellor to decree a distribution of the fund which circumstances existing at that time reasonably indicate would be a detriment rather than a benefit. We hold merely that distribution must be held in abeyance until the time fixed by the testator has elapsed.

"Since the defendants who seek to intervene are before the Court only by publication and we assume that the judgment is not yet final as to them, Code Section 10460, it is not necessary to determine their right to intervene in this Court. Even with procedural questions out of the way, we could not determine their right to intervene without hearing proof as to their identity. Such questions can best be determined on the remand.

'For the reasons indicated the decree must be reversed and the cause remanded. Costs will be paid

out of the estate. Counsel and guardian ad litem fees on the appeal will be fixed by the Chancellor and likewise paid out of the estate.''

Before giving consideration to the assignments of error it should be said that the issues involved are extremely controversial. It was the well-considered opinion of the Chancellor that in view of the strained relationship between the governments of Russia and the United States, that the primary beneficiaries of the testator could not be contacted by the Administrator and, if it were possible to do so, any effort to do so might jeopardize their safety. His decree directed that the Administrator make no further effort to locate them. There are facts and circumstances appearing in the record which tend to support the Chancellor's view. But we feel that the Court of Appeals was correct in expressing a contrary opinion, holding that the Administrator should not make distribution to the several charitable institutions mentioned in the will until the expiration of five years from the date of the testator's death.

We deem it unnecessary to reply to persuasive arguments of the respective counsel in support of, and in refutation of, the several assignments of error. We will respond to those assignments which we consider as determinative of the issues.

The first two assignments complain that the Court of Appeals erred in holding that it was not *impossible* to communicate with citizens of Russia and that there should be delay in closing the administration of the estate.

The third assignment is as follows:

''In reversing and remanding this cause to the Chancery Court at Knoxville without expressing in its opinion what the duties of the personal represen-

tative of the estate would be upon and after remand."
Assignments 4, 5, and 6 are as follows:

"4. In holding as a matter of law that there is no prohibition imposed by the Government of the United States to the transfer of funds between firms, persons or corporation in the United States to firms, persons or corporations in Russia.

"5. In taking cognizance of the intervening petition improperly filed by the representatives of the Soviet Consul General.

"6. In remanding this case to the Chancery Court without taking judicial knowledge of the fact of the impossibility of communication between firms, persons or corporations located in the United States and firms, persons and corporations located within Russia, without the intervention of the Russian State.

It cannot be doubted that the court was correct in holding that the intention of the testator is of paramount importance and should be followed, "and given effect if it can be done without contravening some rule of property or some fixed rule of law or public policy."

Responding to the contention that the court erred in failing to give specific instructions to petitioner on the remand as to what further action should be taken in searching for the beneficiaries named, we think it not unwise to await further developments because of the manifest difficulties in locating beneficiaries living behind the so-called "iron curtain". Moreover there appears from the record that at least one sister of the testator has made an effort to intervene since this cause was appealed to the Court of Appeals. Whether or not she is an impostor or otherwise, and the pro confesso taken against her should be set aside is wisely left to the decision of the Chancellor. The Court of Appeals prop-

erly refused to rule on the right of intervention by this individual claiming to be a beneficiary.

■ ■ We find no error in the court's holding that there is no prohibition on the transfer of private funds from a citizen of the United States to a citizen of Russia. No statute, or any ruling of the Department of Justice is cited in support of this assignment. There is a letter in the record dated April 18, 1951, from the Department of Justice of the United States to the petitioner stating that there are no such restrictions. The Administrator, however, would not be justified in paying anything to anyone, claiming to be a beneficiary, or to an agent or representative of such beneficiary, i. e., an individual or an official of the Soviet Union, unless expressly authorized by the Chancellor.

The opinion of the Surrogate's Court of New York, *Alexandroff's Estate*, 61 N. Y. S. (2d) 866, and other cases based upon the "Surrogate's Court Act" are not persuasive that the Court of Appeals erred in its opinion.

■ Counsel for the petitioner has ably argued the questions at issue. But we feel, as did the Court of Appeals, that a delay in making disbursement of the funds is in strict conformity to the testator's intention and does not embarrass the administration of the estate in any way, nor have the beneficiaries any legal right to complain at such reasonable delay.

We think the holding of the Court of Appeals is correct. The assignments of error are overruled, and the writ is accordingly denied.