Howard J. Sands, Individually and as Executor,
Estate of Mary Estelle Sands, *Deceased*

*v.*

Jerre Fly Jr., Judge, et al.

(*Nashville*, December Term, 1955)

Opinion filed July 20, 1956.

Tyler Berry and Cletus McWilliams, Franklin, for appellant.

Henderson & Henderson, Franklin, for appellees.

Mr. Chief Justice Neil delivered the opinion of the Court.

This appeal involves the question of whether or not certain devises in the will of Mary Estelle Sands, deceased, violates the rule against perpetuities. The original bill was filed by Howard Sands, individually as the only son of the testatrix, and as executor of her estate, complaining that certain devises in the will to named remaindermen in fee simple violate the rule for remoteness, and are void for that reason.

All persons who were named as such beneficiaries were made parties defendant. The contention is made by them that the will is valid in all respects and does not violate the rule against perpetuities.

The pertinent parts of the will which the Chancellor construed contrary to the complainant's insistence are the following:

*"Item III.* After the payment of debts and funeral expenses, and the cost and expense of administering my estate, I will and bequeath all of my personal property, other than that given to Miss Eugenia Williams, by

Item II above, to my son, Howard J. Sands, for and during his natural life, and at his death all of the same shall be sold and the proceeds of sale shall be used under the direction of the County Court of Williamson County, Tennessee, for the care and maintenance of my family graveyard plot in Mt. Hope Cemetery.

"*Item IV.* I will and devise to my son, Howard J. Sands, but only for and during the term of his natural life, my two tracts of land in the 9th Civil District of Williamson County, Tennessee, one of which I purchased from Dr. J. D. Smith and wife in 1916, containing 23 4/5 acres, and the other tract containing about 100 acres, more or less, and being bounded generally on the north by lands of Booth and Howard Sands, on the east by Bond and Ewing, on the south by Murrey and my own tract of 23 4/5 acres above mentioned, and on the west by Booth and McGavock, with remainder in both of said tracts upon the death of said Howard J. Sands, to his child or children living at the time of his death, but only for the life of such child or children of his, (if more than one child survives him the life estate created for his children to be shared equally between them). Upon the death of the last surviving child of Howard J. Sands, (should he leave one or more surviving him), or upon the death of Howard J. Sands (should he die without being survived by a child), then the first tract of land above mentioned, containing 23 4/5 acres, shall pass to and be vested in fee in my sister, Miss Eugenia Williams, my niece Mrs. Sarah Harvey Boone, my nephews, Eugene Harvey, Mortimer Harvey, O. F. Williams, Jr., and John H. Williams, and my niece Mrs. Frances Mitchell, share and share alike, with the child or children of any one

or more of them who may not be living at the time of the termination of the life estates hereinbefore created to take, per stirpes, the same share or shares in said tract of land that it or their parent or parents would have taken if living at that time. If any one or more of said nieces or nephews should not be living at the time of the vesting of said remainder, and should not be survived by a child or children, then his or her share in the remainder shall pass to the other living nieces or nephews, or to their children as above provided.

"Upon the death of the last surviving child of Howard J. Sands, or upon his death if he should die without a child surviving him, the tract of land containing 100 acres, more or less, above described, I will and devise one-half in fee to the Baptist Orphanage, located on the Franklin-Nashville State Highway, to be used by its governing officials in such way and manner as it may see fit in the furtherance of its charitable work, and the other one-half interest in this tract of 100 acres, more or less, I give, and devise to my niece, Elizabeth Pearson, provided she should be then living, and if not then her share in said tract shall go in fee to her mother, Mrs. Tennie Pearson and her two sisters, Mary and Geneva, share and share alike.

\* \* \* \* \* \*

"*Item VI.* During the lifetime of my said son I charge him with the duty of caring for and seeing after our family plot in Mt. Hope Cemetery at Franklin, Tennessee, and after his death I request that the other legatees and devisees under this will take over and discharge this duty. I do not make any of the legacies or devises hereunder dependent upon their complying with this request but simply ask that they do so in such

spirit of appreciation as they may feel for the provisions I have made for them."

The Chancellor, in an exhaustive and able opinion, held (1) that the life estate in certain personalty bequeathed to Howard J. Sands'for life was void; (2) that the devises to certain remaindermen of the fee were valid, the same not being in violation of the rule against perpetuities; (3) that under Item III of the will the complainant, Howard J. Sands' duty to care for the family plot in Mt. Hope Cemetery was a charge upon his life estate in the lands so devised.

It appears that certain extrinsic evidence was heard by the Chancellor but was excluded as being irrelevant. This evidence was not preserved in a bill of exceptions. The counsel seems to have stipulated that the issues raised by the bill and answer presented only questions of law, to which we have made reference.

The record discloses that Howard J. Sands is the only heir at law and next of kin of Mary Estelle Sands, deceased. At the time his mother died he was forty-four (44) years of age, was married to one Jimmie Smithson, age forty-one (41). They had four children whose names and ages are stated in the bill, to wit, Mary Elizabeth, age eight (8); Judith Lois, age seven (7); Emily Susan, age five (5); and Sarah Catherine, age three (3), all of whom were alive at testatrix's death and were living when the original bill was filed.

Inasmuch as the will was assailed by the Executor as being void, the Chancellor appointed Hon. John H. Henderson as Administrator ad litem whose duty it became to defend the will.

All of the named remaindermen were living at the time the testatrix died. And the Tennessee Baptist Orphan-

age, a charitable organization, was in existence at that time and was operating under the auspices of the Baptist Church of Tennessee, located in Williamson County, Tennessee. It thus appears that all beneficiaries named in the will were in existence when the will in question was executed and were living at the death of the testatrix. In other words, they were definitely ascertained.

The answer of the Administrator *ad litem* admitted that Item III of the will bequeathing a life estate in personalty to Howard J. Sands was void. For this reason we shall make no further reference to it.

The assignments of error complain of the error of the Chancellor in holding that the ulterior interest in the 23 4/5 acre tract is vested and not contingent, and that he likewise was in error in holding that the ulterior interest in the 100 acres devised to Elizabeth Pearson, if she should be living at the termination of the life estate in the grandchildren of the testatrix, was a vested and not a contingent remainder. Other assignments are collateral to the principal question involved on this appeal, that is, whether the various devises in Item IV are void as in violation of the rule against perpetuities. It is by Item IV that the two tracts of land are devised, but to different remaindermen.

As to the two tracts of land the testatrix devised to Howard J. Sands "but only for and during the term of his natural life, my two tracts of land in the 9th Civil District of Williamson County" (describing each tract) "with remainder in both of said tracts upon the death of said Howard J. Sands, to his child or children living at the time of his death, but only for the life of such child or children of his (if more than one child survives him the life estate created for his children to be shared

equally between them)." Now it is further provided that upon the death of the last surviving child, or if he should die without being survived by a child then the smaller tract "shall pass to and be vested in fee in my sister, Miss Eugenia Williams" and to certain named nieces and nephews.

If any one or more of the nieces and nephews should not be living at the time of the vesting of said remainder and should not be survived by a child, then such share shall pass to other living nieces or nephews.

The last paragraph of Item IV devises life estates in the 100 acre tract the same as the smaller tract, except the remaindermen are one-half in fee to the Baptist Orphanage and one-half "to my niece, Elizabeth Pearson, provided she should be then living" and if not then to her mother, Mrs. Tennie Pearson and her two sisters, Mary and Geneva, "share and share alike."

The interest of the Baptist Orphanage is admitted by complainant's counsel "to be a fee simple estate, postponed only in possession."

██ It is a settled rule in all jurisdictions that the intention of the testator is of paramount importance, and this intention must be given effect if it does not contravene some rule of property, or some fixed rule of law or public policy. *Hamilton Nat. Bank v. Touriansky,* 197 Tenn. 245, 271 S.W.2d 1; *Burton v. Kinney,* 191 Tenn. 1, 231 S.W.2d 356, 19 A.L.R.2d 366. "All rules of construction are only aids or helps in ascertaining such intention." *Nashville Trust Co. v. Johnson,* 34 Tenn. App. 197, 236 S.W. 2d 100, 105. As heretofore stated in this opinion the complainant contends that the remainder to his children is contingent and void as violating the rule against

perpetuities. This is also the contention of the guardian ad litem for the minor children of the complainant.

■ Considering the question, the distinction between a contingent and a vested remainder, the former is only the possibility or prospect of an estate, which exists when what would otherwise be a vested remainder is subject to a condition precedent, or is created in favor of an uncertain person or persons. Tiffany on Real Property, Third Edition, Vol. 2, Section 320. The same author says: "A contingent remainder becomes a vested remainder so soon as the condition precedent is satisfied, or the person or persons to take ascertained, the particular estate still existing."

■■ "Remainders are either vested or contingent. A remainder is vested if, at every moment during its continuance, it becomes a present estate, whenever and however the preceding freehold estates determine. A remainder is contingent if, in order for it to become a present estate, the fulfilment of some condition precedent, other than the determination of the preceding freehold estates, is necessary. If an estate is given to A. for life, remainder to his eldest born son in fee, the remainder is contingent until the birth of A.'s firstborn son, and then vests." Gray on The Rule Against Perpetuities, Fourth Edition, Section 9.

■ It must be conceded that the rule against perpetuities applies to contingent remainders. *Hassell v. Sims,* 176 Tenn. 318, 141 S.W.2d 472. Able counsel for the complainant, relying upon the authority of Gray: "Rule Against Perpetuities" and several cited cases, contends that the remainders in the instant case are contingent and void for the reason that the "conditional element", as to the vesting of the fee simple title, was incorporated

into the gift of the remaindermen. In other words the gift in remainder was to take effect upon the last survivor of a class holding title, and right to possession, of the particular estate. The devisees of the particular estate in question were of course the children of their father, Howard J. Sands.

█ While the "conditional element" was incorporated in the gift to the remaindermen, it definitely and conclusively appears that this condition was satisfied at the time of the testatrix's death, all children of Howard J. Sands being alive at that time.

We must look to the language of the will to determine the intention of the testator as to whether or not a condition contrary to the rule against perpetuities was created.

In *Armstrong v. Douglass,* 89 Tenn. 219, 14 S.W. 604, 606, 10 L.R.A. 85, it is held:

"* * * the statute applies to, and the legislative construction controls, the contingent limitation in every case; 'unless the intention of such limitation be otherwise expressly and plainly declared in the face of the deed or will creating it.' If it be clear that the testator in a given case intended the limitation to take effect within the lawful period, then the statute is not needed. If his intention is doubtful, the statute must be applied, and the limitation upheld. It is only where the testator expressly and plainly declares his purpose to create a perpetuity that the contingent limitation will not be saved by the statute. The provision of the statute is the equivalent of a conclusive presumption that the maker of the deed or will intended the limitation to take effect within the lawful period, unless the contrary is expressly and plainly declared."

The foregoing well considered statement is in conformity with the weight of authority that a remainder interest will never be construed as contingent if it is at all possible to hold that it is vested.

"Rule of perpetuities is a peremptory command of law and not a rule of construction for determination of intention.

"Where expression which testator uses is really ambiguous and is fairly capable of two constructions, one of which would produce a legal result and the other a result that would be bad for remoteness, it is presumed that testator meant to create legal rather than illegal interest." *Harris v. France,* 33 Tenn. App. 333, 232 S.W.2d 64.

In support of the foregoing statements, Anderson, P. J., cites Gray: "Rule against Perpetuities" and *Tramell v. Tramell,* 162 Tenn. 1, 32 S.W.2d 1025, 35 S.W.2d 574.

Contention is made by counsel for the complainant that the testatrix, in Item IV of the will, intended to dispose of her entire estate and that she postponed the vesting of the fee simple title to the lands in the named remaindermen to the time *"upon the death of the last surviving child of Howard J. Sands."* It is further insisted that this constitutes a continuous statement of intent by limiting them (remaindermen) in the alternative by way of a contingent remainder after a particular estate in such a way that one may take effect if the other does not.

We think the foregoing provision in the devise merely postponed the time when the remaindermen were to exercise the right of possession. The undoubted effect of it was to diminish the interest of those who were vested with a life estate in the property. The life estate in the

grandchildren, following the life estate in their father, took effect according to the clear intention of testatrix. That intention was unequivocal that, following the termi-, nation of the life estate of Howard J. Sands in the two tracts of land devised, then his children (grandchildren of the testatrix) should have a life estate in the same property. This life estate was to endure until the death of the last survivor of the class. The number of children was not important, or that some might be born after the death of the testatrix. The legal effect of the foregoing italicized language was to devise the fee simple estate in the named remaindermen, the same being vested in interest with the right of possession postponed as clearly indicated to a specified time.

In Page on Wills (3rd Edition, Section 1261) it is said:

"Where testator devises real property by will to specified persons in being, without imposing any additional contingencies upon their taking the property, the fact that they are not to enter into enjoyment of possession of the land devised until after the determination of a particular estate given by will to some other person, does not prevent the interest of the remaindermen from being a vested interest upon the death of the testator.

"* * * * * *

"If the gift over is 'after,' 'at,' 'upon,' or 'from and after,' the death of the life tenant, it is held that the gift over vests at the death of testator, as the word 'after' refers to possession and not to vesting."

In the case at bar the devisees of the particular estate are named as a class. They became vested with a life estate the moment the testatrix died, and the interest so devised opened upon the subsequent birth of children.

The title and interest of remaindermen became vested. upon the death of the testatrix; the condition precedent to vesting was upon an event that was certain to happen not later than a life, or lives, in being and twenty-one (21) years and nine (9) months thereafter. A case, by way of analogy and applicable here, is *Eager v. McCoy,* 143 Tenn. 693, 228 S.W. 709. See also *Satterfield v. Mayes,* 30 Tenn. 58, and *Brown v. Brown,* 86 Tenn. 277, 6 S.W. 869, 7 S.W. 640.

■ Our cases have uniformly held that where interests devised are subject to contingencies, but all these events must happen, and the various classes be determined within lives in being at the death of the testatrix and twenty-one (21) years and nine (9) months thereafter, such interests begin within the limits of the rule against perpetuities. *Eager v. McCoy, supra; Blackburn v. Blackburn,* 109 Tenn. 674, 73 S.W. 109; and *Harris v. France, supra.*

The counsel for complainant relies strongly upon In re Feeney's Estate, 293 Pa. 273, 142 A. 284, as authority in support of his contention that the remainders involved in the instant case violate the rule against perpetuities. We must concede that it is a well considered opinion and tends to support the insistence made. But our own case of *Brown v. Brown, supra,* and other authorities cited in this opinion will not permit us to follow In re Feeney's Estate as controlling.

The facts of the Brown case are as follows:

"A testator bequeathed property to his two children jointly. The will provided that if either should die without children or their issue living at his death, the survivor should take the whole; and that if both should

so die without children, then the entire property should go to the children of testator's sister, E. S., and brother, H. B., *per capita,* the children of deceased ones taking their respective parents' shares. Both children survived the testator, and died childless.''

The Court sustained the validity of the will as not violating the rule against perpetuities even though the estate might possibly vest in an unborn child of an unborn child.

The complainant also relies upon *First Nat. Bank v. Pointer,* 174 Tenn. 472, 126 S.W.2d 335. This case, however, does not involve the rule against perpetuities, but whether the interest of the son of the testator was contingent or vested. It was held that it was an alternative remainder, that is, if he predeceased his father without issue his interest fell to his mother, and was not subject to the claims of creditors of the son's estate.

The remaindermen in the case at bar were ascertained when the will took effect. While the will provided that should one of them die without children surviving, his or her share should go to the survivors, this in no way postponed the vesting in violation of the statute. It was in effect a devise of a remainder in the alternative which is supported by our authorities and especially *First National Bank v. Pointer, supra.* We are therefore constrained to agree with the Chancellor that the devises in question are not in violation of the rule against perpetuities.

■ In concluding this opinion it is proper to say that the will here involved is a very unjust will. But it is the lawful will of the testatrix. The property devised was her property; she could have disinherited her son and

grandchildren had she so desired. This Court cannot make a different will for her under the guise of construing it. It can be truthfully said that this is not the will of the Court, but the will of the testatrix.

The costs of this cause must follow the judgment and decree of the court, except the cost of a reasonable fee due the Administrator *ad litem.* The remaindermen were served with process and a *pro confesso* taken against them. They refused to defend the will by which they profit by the services of able counsel appointed by the Chancellor. It is therefore our well considered opinion that this charge should be against the fee simple estate which vests in the remaindermen as tenants in common. It is so ordered. The cause is remanded to the Chancery Court for such further orders and decrees as may be necessary for a final decree consistent with this opinion.