HARRIS et al. v. FRANCE et al.—232 S. W. (2d) 64.

Western Section. March 16, 1950.

Petition for Certiorari denied by Supreme Court, July 15, 1950.

334

VanDyke & Dunlap, of Paris, for complainant.

Wayne A. Cox and R. H. Rhodes, both of Paris, and W. M. Miles, of Union City, for defendant.

Hugh K. McLean, of Paris, guardian ad litem for minor defendant Gregg Palmer.

Fisher Neal, of Paris, guardian ad litem for all other minor defendants.

ANDERSON, P. J. J. I. Palmer died intestate on April 18, 1946, while domiciled in Graves County, Kentucky. Some of the property which he undertook to dispose of by his will was located in Kentucky and some in Tennessee. The question for decision is whether the devise in Item 3 of the will, whereby the testator undertook to dispose of his property in this State, is void as

being in contravention of the rule against perpetuities. The will was before the Court of Appeals of Kentucky in Martin v. Harris, 203 S. W. (2d) 78, who held that the question here presented for decision was one for the courts of this state to decide.

Item 3 of the will is as follows:

"I hereby will and devise in trust to Jessie Harris, R. L. Lawson and Norman McGee, as Executors and also as Trustees, for the use and benefit of my nieces and nephews, to wit; Jessie Harris, Almon Harris, Katie Mae Hunt, Nellie Stokes, Martha Webb, James Harris, Rebecca McGee, Love Harris Lookofsky, Wilber Buckingham and Irvine P. Buckingham, Gilbert Buckingham, and Jack Buckingham, all of my real estate which I own in the State of Tennessee, in my individual name, (not including partnership real estate), and said property is will to my executors and trustees for the sole use and benefit of the children of my said nieces and nephews above named, and the trustees mentioned will keep on said land and farms a herd of cattle, 40 head of cattle, brood cows, and which are now on the place, and then from six to ten brood sows, from 20 to 40 head of sheep, and included in this bequest in the cattle, hogs and sheep which are now on the place and the trustee will sell the increase and out of the profits of the livestock and farming operations they will pay taxes, insurance, and the necessary running expenses, and insurance on the buildings on said place, and then the profits to be divided among the children of my nephews and nieces as above set out.

"Provided that the trustees may employ a foreman if, in their judgment, it should be done to run said farming operations, however, the trustees may personally super-

vise the same if they so desire, but in any event they are to control the policy of the farming and livestock business.

"And provided further, that this trust shall continue until the youngest child of my nephews and nieces reaches the age of thirty years, and that means whether the children are born before or after my death.

"This trust is to continue until the youngest one reaches the age of thirty years. Provided the 66 acres, more or less, that I own and which is located near Hazel, Kentucky, but the land is in Tennessee and in Henry County, and this is excepted from the said trust above set out and will be disposed of hereafter. Provided further that all of my land owned individually in Tennessee, with the exception of the 66 acres, located near Hazel, Kentucky, Henry County, Tennessee, is to be divided, or sold for division, is to be divided among the children of my nephews and nieces above set out."

The real property disposed of by this devise amounts in the aggregate to some 1,285 acres of land lying in Weakley and Henry Counties, Tennessee.

It is conceded that the recitation in the first part of the clause to the effect that the devise is in trust for the use and benefit of the named nieces and nephews was an inadvertence, and that as indicated later in the clause the trust created is one for the use and benefit of their children rather than for the nieces and nephews themselves.

All of the named nieces and nephews were living at the testator's death. A number of them had children living at that time, none of whom had reached the age of thirty. One child has been born to the nephew, Almon Harris, since the death of the testator.

▮ Afterborn children are not directly included in the language of the gift. They are mentioned only in connection with the duration of the trust. But we are satisfied that the testator intended to make such children additional beneficiaries of both the income and the corpus. There is no contention to the contrary.

We are indebted to counsel for elaborate briefs and arguments concerning the interesting questions involved, but we deem unnecessary an extended discussion of all the propositions argued.

As stated by Prof. Gray, the Rule against Perpetuities is as follows: "No interest is good unless it must vest, if at all, not later than 21 years after some life in being at the creation of the interest". Gray: The Rule against Perpetuities, Sec. 201.

▮ In this state the same rule has been expressed in this language: "Executory limitations, whether of real or personal estate, in order to be valid, must vest in interest, if at all, within a life or lives in being and 21 years and a fraction thereafter, for the term of gestation in cases of posthumous birth." Eager v. McCoy, 143 Tenn. 693, 702, 228 S. W. 709, 711.

▮ The rule governs both legal and equitable interest, and interest in both realty and personalty. Gray: The Rule against Perpetuities, Sec. 202.

▮ ▮ It is a peremptory command of the law, and not a rule of construction whereby to determine intention. Nevertheless there is a proper use of the rule in matters of construction. Thus it is said that when the expression which a testator uses is really ambiguous and is fairly capable of two constructions, one of which would produce a legal result and the other a result that would be bad for remoteness, it is a fair presumption that the

testator meant to create a legal rather than an illegal interest. Gray: Rule against Perpetuities, 3d Ed., Secs. 629, 633.

■■ This is no more than a recognition of the general rule that where the provisions of a will are ambiguous, that interpretation should be adopted, if reasonable, which will sustain the will and carry out the intention of the testator. Tramell v. Tramell, 162 Tenn. 1, 14, 32 S. W. (2d) 1025, 35 S. W. (2d) 574.

"The remoteness against which the rule is directed is remoteness in the commencement or first taking effect of the limitations, and not in the cessor or determination of them. An estate that is to arise within the prescribed period may be so limited as to be determined on the happening of any event, however remote". Lewis on Perpetuities, page 144.

Hence, in the case of a trust, if the trust begins within the prescribed period, the fact that it may continue beyond that period does not render it invalid. Tramell v. Tramell, 162 Tenn. 1, 32 S. W. (2d) 1025, 35 S. W. (2d) 574; Eager v. McCoy, supra.

It is certain that by the devise under consideration the testator intended to dispose of his entire estate in the trust property. There is no limitation over following the gift to the grand-nephews and grand-nieces. Except for the title given the trustees for the purpose of carrying out the trust, the will unmistakably manifests an intention to bestow the entire interest in the property upon the children of his nephews and nieces living at his death and those born thereafter.

■■ The same persons who are given the profits accruing during the trust period, are given the corpus in the same proportion to be divided among them at the

termination of the trust. There is no express restraint of alienation of either the income or the corpus. Nor is there any restriction as to the use to which either may be put. The obligation of the trustees to pay over the net income to the beneficiaries in esse at the time is unqualified and absolute, as is the right of the beneficiaries to receive the same. The trustees are given no discretion about the matter. No time for the payment of the income is fixed, but there is no direction for its accumulation. Where this is the case, the general rule is that the trustee must pay the income to the beneficiaries as it is received. Godsey v. Lenderson, 9 Tenn. App. 580, 585. In the present case, however, having regard to the nature of the property, the manner in which it is to be used, and the directions with respect to the manner in which the net profits are to be ascertained, it is clearly implied that the net income shall be distributed annually.

█ It is obvious therefore that in addition to the gift of the income, the testator intended to bestow upon the trustees for the duration of the trust the entire legal estate in the corpus to the extent necessary to carry out the trust, and the beneficial interest upon the children of the named nephews and nieces living at the time of his death and those born thereafter, the gift to the afterborn children being by way of an executory devise. Eager v. McCoy, 143 Tenn. 693, 705, 228 S. W. 709; Tramell v. Tramell, 162 Tenn. 1, 32 S. W. (2d) 1025, 35 S. W. (2d) 574.

█ At the termination of the trust, the equitable estates will be converted into legal estates by the falling in of the trust. Ellis v. Fisher, 35 Tenn. 231, 65 Am. Dec. 52; Temple v. Ferguson, 110 Tenn. 84, 72 S. W. 455, 100 Am. St. Rep. 791.

The question is whether it is possible for any estate created by the devise to vest in interest at a time beyond the prescribed period, having regard to the rule against perpetuities. See Gray: Rule against Perpetuities, Sec. 110, 118, 205 a; Simes: Law of Future Interests, Vol. 2, Secs. 498, 499.

The case has been presented and will be decided upon the assumption that the division or sale for division of the corpus is to be made upon the termination of the trust. It has also been assumed that the power to divide the property or sell it for that purpose is conferred upon the trustees; and for present purposes this may be taken as correct.

But manifestly the testator intended that upon the termination of the trust the property should be divided according to the dispositions of the will controlled by the applicable law and in no other way,— that is, among those to whom it was given by the will independently of the power conferred upon the trustees. But if it be said that the execution of the power of sale would amount to a conversion, thus creating new estates which were too remote and hence that the rule was violated by the attempt to confer that power upon the trustees, still this does not make void for remoteness the estates of the beneficiaries if they are otherwise valid. Eager v. McCoy, supra.

Apart from the power of sale, since the estate of the trustees began immediately upon the death of the testator, there can be no doubt about its validity when tested by the rule against perpetuities. Tramell v. Tramell, supra. The question is with respect to the validity of the estates of the beneficiaries. The case for invalidity proceeds upon the assumption that the de-

vise was to a class, and of course this is true; but this does not necessarily and conclusively negative an intention on the part of the testator to bestow several interests upon the individual members of the class rather than a joint interest upon them as a unit with survivorship as an implied condition precedent to the vesting of any interest in the individuals.

Where there is a gift to a class to be determined in the future and the question is whether it is valid when tested by the rule against perpetuities, there is a distinction to be drawn between the postponement of the enjoyment beyond the prescribed period and the postponement of a vesting of the interests of the class. Thus if the share of each member of the class is to vest in interest at the death of some person named in the will who was in being at the time of the testator's death, the rule is not violated by a provision that the share shall not be paid to him until he attains the age of 25 or until all the members of the class attain that age.

Perry on Trusts and Trustees, Sec. 381, page 637.

It is contended, however, that under the class doctrine as it is applied in this jurisdiction the estate does not vest in interest in the individuals composing the class until the time fixed for distribution of the property, and since in the devise under consideration this is fixed at the time the youngest of the children of the nephews and nieces, whether born or unborn at the time of the testator's death, becomes 30 years of age, the vestiture is too remote when tested by the rule against perpetuities.

If the premise of this contention is sound, the conclusion is also. This is too clear for argument. Obviously, therefore, the determinative question is whether the class doctrine as administered in this jurisdiction

is applicable to the devise under consideration. That doctrine as understood in this state and first applied in Satterfield v. Mayes, 30 Tenn. 58 is as follows: "Where a bequest is made to a class of persons, subject to fluctuation by increase or diminution of its number, in consequence of future births or death, and the time of payment or distribution of the fund is fixed at a subsequent period, or on the happening of a future event, the entire interest vests in such persons only, as, at that time, fall within the description of persons, constituting such class. Satterfield v. Mayes, 30 Tenn. 58. See also Sanders v. Byrom, 112 Tenn. 472, 474, 79 S. W. 1028; Tate v. Tate, 126 Tenn. 169, 148 S. W. 1042." Jennings v. Jennings, 165 Tenn. 295, 301, 54 S. W. (2d) 961.

Under this doctrine the individuals composing the class have no estate prior to the period for distribution but only an expectancy. Cf. Rinks v. Gordon, 160 Tenn. 345, 24 S. W. (2d) 896; Hobson v. Hobson, 184 Tenn. 484, 201 S. W. (2d) 659. The mere fact that the time of payment or distribution is postponed implies a condition precedent of survivorship. Sanders v. Byrom, supra.

The foregoing view of the class doctrine is contrary to the common law and the great weight of authority. Simes: Law of Future Interests, Vol. 1, Sec. 76; see also Vol. 2 Sec. 390, page 158; Sanders v. Byrom, 112 Tenn. 472, 474, 79 S. W. 1028. Because it so often operates to defeat the intention of the testator, our courts have been increasingly reluctant to apply it, and have done so only where it was impossible to discover anything in the instrument justifying a refusal to do so. Bowers v. Moore, 138 Tenn. 132, 196 S. W. 147; Tate v. Tate, 126 Tenn. 169, 148 S. W. 1042; Hobson v. Hobson, supra; Keeling v.

Keeling, 185 Tenn. 134, 203 S. W. (2d) 601; consult, Parish v. Grooms, 1 Tenn. Ch. 581, 585; Whitman v. Young, 1 Tenn. Ch. 586, 588; Chambers: History of the Class Doctrine in Tennessee, 12 Tenn. Law Review, 115.

In 1927 the legislature took cognizance of the situation and passed a statute embodying a rule of construction designed to avoid the defeat of the testator's intention by the application of the class doctrine as it had theretofore been applied in Satterfield v. Mayes, 30 Tenn. 58, and the cases which followed the rule there announced. This statute, Acts of 1927, Chapter 13, now appears in the Code at Section 7598.[1]

Before the statute, the mere fact without more that the time of payment or distribution was postponed, required the conclusion that survivorship was by implication a condition precedent to the vesting of separate estates in the individual members of the class. Sanders v. Byrom, supra, 112 Tenn. at pages 480, 481, 79 S. W. 1028.

The statute forbids such an implication and the fact that the time of distribution is postponed is reduced to a circumstance to be considered along with the other circumstances and provisions of the will in determining

---

1. Code Section 7598, Transferees subject to fluctuation, death before vesture—"Where a bequest, devise, conveyance, transfer or gift is made to a class of persons subject to fluctuation by increase or diminution of its number in consequence of future births or deaths, and the time of payment, distribution, vesture or enjoyment is fixed at a subsequent period or on the happening of a future event, and any member of such class shall die before the arrival of such period or the happening of such event, and shall have issue surviving when such period arrives or such event happens, such issue shall take the share of the property which the member so dying would take if living, unless a clear intention to the contrary is manifested by the will, deed or other instrument. (1927, ch. 13, sec. 1, Modified.)"

whether there is a clear manifestation of an intention that the entire interest vest in such persons only as fall within the description of the persons constituting the class at the time fixed for payment or distribution of the estate. In other words, by virtue of the statute, where applicable, the rule now is that notwithstanding that the time of payment or distribution of the estate is fixed at a subsequent period, or upon the happening of a future event, the individual members of the class will take vested transmissible interest unless the will, considered as a whole in the light of all the circumstances, manifest a clear intention to the contrary.

It is contended, however, that this act has no application to the present case because it presupposes that an affirmative answer should be given to the very question and issue, namely, whether the devise is valid when tested by the rule against perpetuities. This, we think, is too narrow a view. Both the class doctrine and the rule against perpetuities deal with the time when estates vest. Whether the estate falls under the ban of the latter rule may very well depend upon the question whether the former rule, as heretofore administered in this State, applies and that is the situation in the present case.

In accord with the trend of judicial decision away from the class doctrine as originally promulgated, the statute proclaims a legislative declaration of a change in policy which we think should not be ignored by the courts in any effort to discover whether in making a devise to a class, the testator intended to bestow separate and several interests on the individual members rather than to vest the entire interest in the class as a unit with survivorship as a condition precedent to the vestiture of any

interest in the individual members. Consult: Chambers' History of the Class Doctrine in Tennessee, 12 Tenn. Law Review, 115.

However, it is not necessary to resort to the statute to determine the issue in the present case.

As indicated, long prior to that enactment, the courts in this state had manifested a determination to avoid the application of the class doctrine as originally laid down by establishing an exception to the rule promulgated in Satterfield v. Mayes, supra. This exception is to the effect that the class notion is disintegrated by a finding in the will or deed as the case may be, of some indication of a purpose to create several interests, and such interests have been established on slight grounds in quite a number of cases. Bridgewater v. Gordon, 34 Tenn. 5; Sanders v. Byrom, supra; Tate v. Tate, 126 Tenn. 169, 148 S. W. 1042; Keeling v. Keeling, 185 Tenn. 134, 203 S. W. (2d) 601.

Thus, in Davis v. Goforth, 69 Tenn, 31, the court said that, ''Anything that indicates an intention on the part of a testator that one or more individuals of the designated class shall enjoy a several interest is sufficient to give all of the class a vested and transmissible estate.'' See also, McClung v. McMillan, 48 Tenn. 655; Bowers v. Moore, 138 Tenn. 132, 196 S. W. 147.

This view was reiterated in the recent case of Hobson, v. Hobson, 184 Tenn. 484, 491, 201 S. W. (2d) 659, 662, where Mr. Justice Tomlinson, speaking for the Court said: Pursuant to this established rule of public policy'' which ''favors the vesting of estates at the earliest moment not inconsistent with the plain provisions of the will. . . . the Courts will eagerly look for some provision or expression in the will which will reasonably

justify a decision that the class doctrine (as above defined) does not apply to the particular will it may be construing." See also, Keeling v. Keeling, 185 Tenn. 134, 203 S. W. (2d) 601.

It is clear, therefore, that the class doctrine is no fixed rule of law to be applied without regard to the testator's intention, as for instance, is the rule against perpetuities. Upon the contrary, in this state as elsewhere, the rule for determining whether the gifts to several persons are gifts to them as a class or as individuals, is to ascertain the intention of the testator.

So our task is to determine whether the general rule defining the class doctrine, or the exception thereto, applies to the devise under consideration. More specifically, the determinative question is resolved into whether we can find in the will any "slight indication" of a purpose on the part of the testator to create separate and severable interests rather than to vest the interest in the children of the nephews and nieces as a unit, with an implied condition precedent of survivorship.

Instances where such an indication has been found by the court begin with Bridgewater v. Gordon, 34 Tenn. 5, where there was under consideration a bequest to a wife for life or widowhood, to be used for the purpose of raising and educating the testator's children, with the provision that the wife in her discretion should give to any of the children upon their marriage or settlement in business such portion of the estate as she might consider expedient and proper, provided that any such portion so given by the wife should be valued and an account kept "so that at the final settlement all my children may receive equal portion, share and share alike". By another item it was provided that at the

death or marriage of the wife, the estate should be equally divided between the children of the testator, share and share alike, "having a just and equitable regard to such portions of property as may have been given to any of them by my wife as authorized, so that no one of them may receive more than another." After stressing the fact that provisions were made for advancements to the children and then for a subsequent equalization so as to make the shares the same, it was held that the provision for advancements indicated that the mind of the testator was upon each individual child and showed a purpose to create an estate in severalty.

In Harris v. Alderson, 36 Tenn. 250, the will was: "I give and leave in the hands and possession of my two sons, William B. Alderson and Balthus C. Alderson, the one-fourth Part of said balance of all my estate and the increase thereof, to be by them taken care of for the express use and benefit of my daughter, Susan Alderson, and her children that she now has or may have, and apply it to their use and benefit, and no other whatever, and at her death to be equally divided between her children."

It was held that the children were individualized by the use of the expression, "that she now has or may have", and the case was thus distinguished from Satterfield v. Mays, supra, and held to fall under the exception established in Bridgewater v. Gordon, supra. Said the Court: The property is for the use and benefit of said Susan and her children, 'that she now has or may have'. To these—that is, to those children then in being, three in number, or that might thereafter be born to her—the property is to go at her death. The remainder could not be more fixed or certain in each child then in existence, opening to let in such as might be born afterwards, if

they had been named.'' See also Bowers v. Moore, supra.

Other instances where the court has found an indication or intention on the part of the testator that the beneficiaries should not take as a class are collected in Tate v. Tate, supra.

There is to be found in the devise in the present case equally as strong indications that the testator intended to create several interests in the trust property as were present in the foregoing cases. What was true in Harris v. Alderson, supra, is true in the present case. The only difference is in the language employed. There, as appears from the language above quoted, the intention to individualize the gifts was found in the fact that the property was devised for the use and benefit not only of the daughter and her children living at the testator's death, but for any ''she may have'' thereafter. In the present case precisely the same intention is found in the fact that, as we have construed the devise, the children of nephews and nieces born after the testator's death are equally the objects of his bounty.

But an even stronger indication of an intention to the same effect is to be found in the factum of the gift of the income from the property. This was equivalent to a devise of an equitable estate in fee in the property itself. Tramell v. Tramell, supra; Eager v. McCoy, supra. It was manifestly the intention of the testator that the profits should be divided among the individuals constituting the class at the time the division was required. As already said, the duty of the trustees to pay each member of the class his share of the profits is absolute, and the right of each member to receive his share is like-

wise absolute with no restriction upon the use of the amount so received.

The corpus is bestowed upon the same persons to whom the profits are given. The gift of the profits vested immediately upon the testator's death in grandnephews and grandnieces then living and in those thereafter born immediately upon their birth. The testator thus manifested a clear intention that the individual devisees to that extent should benefit from the gift of the corpus immediately upon his death, and this intention is altogether incompatible with the idea that only those members of the class living at the termination of the trust should share in the property devised. No such provision for the payment of the profits could have been made if the testator had been thinking not of the individual members of the class but of the class as a unit with survivorship as a condition precedent to the vesting of any interest in the individuals. Cf. Bowers v. Moore, 138 Tenn. 132, 196 S. W. 147.

Underwood v. Dismukes, 19 Tenn. 299, 309, is in point in principle. It was there held to be "well settled with regard to pecuniary legacies, that, however in point of terms and from the gift itself and the time of payment may be annexed, still if the interest upon the legacy is, in the meantime given to the legatee, the legacy itself is vested."

And it seems to have been held in a majority of cases that an intermediate gift of income accruing during the term of an active trust at the end of which the corpus is to be distributed among the beneficiaries, is conclusive, nothing else appearing, of the intention of the testator that an equitable, transmissible estate in fee should vest in the beneficiaries immediately upon his

death. Coddington v. Stone, 217 N. C. 714, 9 S. E. (2d) 420, 423; and see, Cropley v. Cooper, 19 Wall. 167, 86 U. S. 167, 22 L. Ed. 109; In re: Bilyeu's Estate, 346 Pa. 134, 29 A. (2d) 516, 518; and other cases collected in note in 155 A. L. R. 698 et seq.; and Cf. Sime's Law of Future Interest, Vol. 2, Sec. 356; and Vol. 2, Sec. 394; and cases in Note, 144 A. L. R. 1155, 1162.

In the present case it will be observed that the provision postponing the division of the trust property is separate and unconnected with the words constituting the gift. The language manifestly imports a gift in praesenti. Considering the words used and the context, it was not the vesting of the estate in the beneficiaries which the testator desired to delay, Cf. Keeling v. Keeling, supra, but the termination of the trust, which does not exclude the idea of a prior vesting of an equitable estate in fee in the beneficiaries. Eager v. McCoy, supra; Tramell v. Tramell, supra.

It is proper to say that the present case is distinguishable from the leading English case of Leake v. Robinson, 2 Mer. 363, 1817, applying the rule against perpetuities to class gifts. The gift under consideration there was held too remote: this was because the gift was to be found only in a direction to pay the donees who should reach the age of twenty-five. Here, the gift is not in the direction to divide the property but in other language, importing a substantive gift in praesenti of an equitable estate in fee.

 We conclude therefore that the devise under consideration falls within the exception to the class doctrine, established by Bridgewater v. Gordon, supra. The entire equitable estate vested upon the testator's death in the children of the nephews and nieces then

living, subject to the provision for afterborn children. It is true, the devise was to a class, but the members took several interests as tenants in common, each having a vested equitable interest in fee which was transmissible. Underwood v. Dismukes, supra; Bowers v. Moore, supra; McClung v. McMillan, 48 Tenn. 655; Henson v. Wright, 88 Tenn. 501, 12 S. W. 1035; Eager v. McCoy, supra; Tramell v. Tramell, supra; Godsey v. Lenderson, 9 Tenn. App. 580; Anderson v. Lucas, 140 Tenn. 336, 347, 204 S. W. 989; Stier v. Nashville Trust Co., 6 Cir., 158 F. 601; Cf. Davis v. Mitchell, 27 Tenn. App. 182, 178 S. W. (2d) 889.

It remains to be determined whether the fact that the estates vesting upon the death of the testator must open to let in afterborn children of the same class, makes the devise violative of the rule. This depends upon whether the number and hence the size of the shares must be determined within the prescribed period. Gray: Rule against Perpetuities, Sec. 205a; see also, Sec. 110a; consult, Restatement of the Law of Property, Vol. 4, Secs. 386, 387. The answer to this inquiry must be in the affirmative. The minimum number of shares was determined at the death of the testator. They can never be less in number because the interest of each member of the class is transmissible and upon his death passes to his heirs, distributees, or devisees as the case may be. Simes: Law of Future Interest, Vol. 2, Sec. 371, page 129; Cf. Bowers v. Moore, supra; McClung v. McMillan, supra; Whitman v. Young, supra; Blackburn v. Blackburn, 109 Tenn. 674, 73 S. W. 109.

The maximum number of shares will necessarily be determined within ten months after the death of the last survivor of the nephews and nieces, all of whom were

living at the death of the testator. Simes: Law of Future Interest, Vol. 2, Sec. 371, page 129; Restatement of the Law of Property, Vol. v, Secs. 386, 387.

Hence all of the estates created by the devise will vest in interest within the period prescribed by the rule.

Cf: Eager v. McCoy, 143 Tenn. 693, 705, 228 S. W. 709; Winters v. March, 139 Tenn. 496, 202 S. W. 73; Patton v. Winters, 20 Tenn. App. 600, 101 S. W. (2d) 708; Tramell v. Tramell, supra; Wurst v. Savings Deposit Bank & T. Co., Ohio App., 47 N. E. (2d) 676; Sheperd v. Union & N. H. Tr. Co., 106 Conn. 627, 138 A. 809; Howe v. Hodge, 152 Ill. 252, 38 N. E. 1083; First National Bank v. DeWolfe, 134 Me. 487, 188 A. 283. Restatement of Law of Real Property, Vol. 4, Secs. 386, 387.

But it is contended that where the vesting of a gift is not limited upon the life of any person, the term cannot be longer than 21 years computed from the time of the creation of the future estate or interest. The rule has been so stated. 41 Am. Jur. 63; see also Perry on Trusts, Sec. 380. But taken in the abstract, this statement is too broad; and if it is meant that in limiting a gift, the testator must in express terms avail himself of the allowance of a life or lives in being, otherwise the permissible term is not longer than 21 years, it is incorrect. The question is not to be determined by the intention of the testator, but by the law, having due regard to the actual situation to which the limitation applies. From this situation the lives, which furnish the measurement are ascertained from "among the persons mentioned therein, or affected thereby, or actually existing in the family concerned". So, if the testator expressly fix a standard of measurement by

which in the situation created the gift would be too re-mote, but the limitation furnishes another measurement by lives, which is not longer than the prescribed period, it will be adopted and the gift held valid. Re-Statement of the Law of Property, Vol. 4, Sec. 374, page 2188, 2189.

In the present case the testator did not in express terms avail himself of the allowance of a life or lives in being, but as we have seen, the inherent nature of the gift and the manner in which it was made create a situation in which the number and size of the shares in the property depend upon the lives of the nephews and nieces named in the will, all of whom were living at the death of the testator. Hence such lives provide the measurement by which it is to be determined whether the gift is too remote. Ibid. See also Sec. 386 and 387. McArthur v. Scott, 113 U. S. 340, 5 S. Ct. 652, 28 L. Ed. 1015; Wurst v. Savings Dep. Bank & Trust Co., supra.

The conclusion reached is fortified by the favor with which the courts look upon the vesting of estates and by the rules (1) that the law favors the legatee, and (2) that when the language employed by the testator is ambiguous and fairly capable of two interpretations, one of which would produce a legal result and the other a result bad for remoteness, it is a fair presumption that the testator meant to create a legal rather than an illegal interest.

Moreover, the result is calculated to give effect to what is manifestly the scheme adopted by the testator in making his testamentary dispositions. His object in creating the trust was not to withhold an interest from any of the children of the named nephews and nieces, but to withhold from them the management of the property during the period fixed.

Manifestly, he considered that it would be to the interest of the beneficiaries that the property be held together and operated as a unit by the trustees until the ultimate takers are ascertained and the youngest of the beneficiaries who lived so long had reached the age of 30, allowing them to enjoy the income in the meantime. When it is considered that there were seventeen greatnephews and nieces living at the time of the testator's death and that afterborn children were to become members of the class, it is easily understood how the testator could think his scheme to the best interest of the beneficiaries, especially since some of them were minors. He is supposed to have known that upon the one hand vesting in the trustees an estate which would enable them to manage the property would not prevent a vestiture of an equitable estate in fee in the beneficiaries as of the time of the testator's death, and upon the other hand that the vesting of such an estate in the beneficiaries would not interfere with the management of the property by the trustees.

Finally, to say that the mere fact that the period of distribution was postponed, implies a condition precedent of survivorship, and as a result only those living at that period would take the property, would likely exclude from the gift of the corpus several members of the class, especially the older ones who were living at the time of the testator's death. There is nothing in the will to justify the conclusion that the testator had any such intention. Upon the contrary, it is a reasonable supposition that since presumably he knew the grandnephews and nieces born in his lifetime, they were, if anything, the primary objects of his affection.

Several ways are suggested for determining the trust period, looking to shortening the duration of the

trust. This may be desirable from the standpoint of all concerned, but the language of the testator leaves no room for doubt about what he intended. In fixing the period at the time when the youngest child of the nephews and nieces reached the age of 30, he, in express terms, said that he meant to include children born after his death. In the eyes of the law there will be present the possibility of other children being born so long as there is living a nephew or niece. Hence, the only reasonable construction is that the testator intended for the trust to continue until all of the children who live so long have attained the age of 30 and the last survivor of their parents, i. e., the nephews and nieces named in the will, is dead. In other words, it takes the concurrence of two things: the attainment of the age of thirty by all the children who live so long and the death of the last survivor of the nieces and nephews named in the will.

Consult: Re-Statement of Law of Property, Vol. 3, Sec. 295, Comment K.

The views of the sitting chancellor, the Honorable Dewitt Henderson who sat by interchange with the regular chancellor, were in full accord with the views herein expressed, and his decree is in all respects affirmed.

The cause will be remanded for the fixing of such counsel fees as are proper to be paid out of the estate, and the fees for the guardians ad litem for services rendered both in the chancery court and in this court; and any further proceedings that may be proper and necessary. Since the estate derives a benefit from the suit, the cost, including the cost of the appeal, will be paid by the executors and their sureties.