D. T. MILLER, et al., Complainants-Appellees,

*v.*

MARLON FRIBERG MILLER, Défendant-Appellant.

(*Knoxville,* September Term, 1957.)

Opinion filed June 6, 1958.

BRYANT & BRANDT, Johnson City, for appellant.

Cox, EPPS, POWELL & WELLER, Johnson City, for appellees.

MR. JUSTICE SWEPSTON delivered the opinion of the Court.

This suit involves the construction of Par. 2 of Item Two of the will of Elbert Haynes Miller, who died April 25, 1942, which will was executed the 14th day of June, 1934. It will be conducive to a clearer understanding of the issues to state the substance of the will at this point.

The will is divided into three items and Item Two is divided into five numbered subsections or paragraphs. By Item One he bequeaths to his wife, Marion Friberg Miller, his household furniture and tangible personal property in, around, about and used in connection with his residence at the time of his death, including automobiles and petty cash, but not including bank deposits, stocks, bonds and other choses in action.

By Item Two he bequeaths and devises the residue of his estate of every nature and wherever situated, after payment of debts and funeral expenses, to Hamilton Na-

tional Bank of Johnson City, Tennessee, and W. W. Miller, D. T. Miller and his daughter Mrs. J. Gump in trust for the following purposes:

By the numbered Par. 1 he gives to said Trustees full and complete authority for the handling of his estate.

By numbered Par. 2 he provides "to pay taxes and other governmental charges and necessary insurance and then pay over the net income monthly or quarterly, or as often, in the judgment of my Trustees, as their needs shall require to my wife, during her lifetime, for the support of herself and the support and education of my children. And my wife shall not be compelled to observe a pro-rata distribution of said income to or in behalf of said children. The receipt of my wife alone shall be sufficient voucher for the Trustees."

By numbered Par. 3 it is provided "if my wife shall die before all of my children shall be of age and through school, after her death to apply the income for the support and education of my children, letting any surplus income accumulate and be reinvested; and said Trustees in this event likewise shall not be bound to observe a pro-rata distribution of said income among my children."

By Par. 4 it is provided "after the death of my wife and after all of my children shall be through school, including college, professional and technical schooling, then, as each child shall attain the age of (28) years, to deliver and convey to such child one-half of his or her share in the corpus of my estate, freed and discharged of the trust, and when and as each child shall attain the age of (35) years, to deliver and convey to him or her the remaining half of his or her share, freed and dis-

charged of the trust." (The rest of this paragraph provides for an equal division and pro-rata distribution of the assets and for the representation of a deceased child by his or her children, etc.)

Then numbered Par. 5 provides "if the income from my trust estate, together with their income from other sources shall, for any reason—whether illness or accident or misfortune or emergency of any kind—not be sufficiently comfortably to support my wife and children and reasonably to educate my children, including college, professional and technical training, I authorize my Trustees in the exercise of their sound discretion to anticipate the income to be paid over, or if necessary to use, from time to time, enough of the corpus for these purposes to the end that my estate may be of the most good to my wife and children."

Then by Item Three he makes the above named Trustees co-executors and co-trustees, giving them some additional powers, such as to borrow money and pledge the property of the estate and to continue the businesses in which he may be engaged at the time of his death to such time as they deem proper and excuses them from giving bond. He then fixes the amount of their compensation and makes other provisions that shed no light on the questions before the Court.

It appears from the original bill that the Hamilton Bank never qualified as Trustee and that upon the death of W. W. Miller the two surviving Trustees, with the consent of the interested parties, procured the appointment by the chancery court of Clem C. Wilkes and Mose C. Jones as substitute Trustees, they being the respective husbands of two of the daughters of the testator,

to-wit, Dorothy Miller and Marion Miller. Also, the testator was survived by his widow and three daughters, the two above named and Mrs. J. Gump. The original bill is, therefore, filed by D. T. Miller, Clem C. Wilkes and Mose C. Jones as Trustees and by Sara L. Gump, or Mrs. J. Gump, both as Trustee and beneficiary and by Dorothy Miller Wilkes and Marion Miller Jones as beneficiaries of said trust against the surviving widow, Marion Friberg Miller.

It is alleged in said original bill that at the time the will was written and executed the wife of the testator was 48 years of age and at the time of his death she was 56 years of age and that she is now 71 years of age. And at said times the wife of the testator had a separate estate and property and that he knew that his wife liked to spend money that she had on hand, and from time to time she ran out of money and came to him for additional monies. That he spent about a year in preparing, writing and executing this will.

That at the time the will was executed and at his death, of his three children only Mrs. Gump was married, the other two daughters being then unmarried, and were living in the testator's home and in school. That at the time of the death of the testator, Dorothy was in college and Marion was gainfully employed.

It is further alleged that the testator after the execution of his will, had repeatedly stated to D. T. Miller, his half-brother and business associate, that he had made his will so as to take care of his wife and children and he intended to make his estate safe for his unmarried daughters during his wife's limetime and that he wanted his estate held intact above the requirements for the support

of his wife and the requirements for the maintenance and education of his unmarried daughters.

That since the death of testator the Trustees have provided at all times for the defendant, the widow, out of the income from the trust sufficient means varying in amounts from year to year to allow the defendant to live comfortably in the same station in life which she occupied during the lifetime of her husband and that said amounts have been liberal. And that said Trustees have likewise provided from time to time to said widow liberal and sufficient amounts to provide for the education and support of the said children until the unmarried daughters married. That by careful management they have accumulated a surplus of income of more than $100,000, which has been retained in the estate as a part of the trust assets and has been reinvested for the production of further income from the trust.

It is further alleged that despite the foregoing the widow has demanded of said Trustees that they distribute and pay over to her the full and entire amount of the income from said trust estate, including the accumulated surplus income now on hand, but they have declined and refused to do so, and thus the controversy arises as to the proper construction of said par. 2 of Item Two.

Upon demurrer filed by defendant being overruled, she declined through her counsel in open court to plead further and *pro confesso* was taken against her. Hence, the appeal to this Court.

The chancellor decreed in favor of complainants' contention and hence this appeal by the widow.

The chancellor decreed specifically as follows:

"(a) That except in one or more of the contingencies set out in paragraph 5 of Item Two of the Will, the appellant during her lifetime was and is entitled to only so much of the income from the trust declared in said Will as shall be necessary to generously and liberally support her in the station of life to which she was accustomed.

"(b) That, except in one or more of said contingencies, the appellant during her lifetime is entitled to no more of the income, accruing, accumulated, or both, of said trust than is necessary for her generous and liberal support of the station of life to which she is accustomed.

"(c) That the Trustees of said trust are vested with reasonable discretion to fix and determine from time to time the amount necessary for the generous and liberal support of the appellant.

"(d) That the Trustees of said trust are vested with reasonable discretion to fix and determine from time to time the time of payment of such amounts, monthly, quarterly or as in the judgment of the Trustees the needs of the appellant shall, from time to time, require.

"(e) That the appellant is not now as of right entitled to the whole or any part of the accumulated income now on hand and undistributed by said Trustees."

Error is assigned as to each of these holdings.

Before addressing ourselves to the particular language of par. 2 of Item Two, we make the following observations:

■ (1) From the will itself and from the allegations of the bill, it is apparent that testator left a large estate,

both real and personal; (2) he deliberated for about a year over the terms of his will before making and executing same and said will was drafted with skillful care; (3) he left his widow nothing but the net income from his entire estate for life, other than the personal property used in and about the operation of the home, and the automobiles, but no other personalty and no realty; (4) she did not dissent from the will; (5) she had an income of her own and he knew that she was a free spender and yet this trust does not bear any of the *indicia* of a spendthrift trust, except that it is an active trust which under our statute T.C.A. sec. 26-601 exempts the income coming to her from execution by any creditor of hers. *Jourolmon v. Massengill,* 86 Tenn. 81, 5 S.W. 719; *Davis v. Mitchell,* 27 Tenn.App. 182, 178 S.W.2d 889.

■ There are no restrictions upon what she may do with the income, it being left up to her to support herself and the children and to educate them obviously according to her judgment and desires; of course, a court of equity in a proper case would interfere to prevent an abuse of this quasi-trust placed upon her for the benefit of the children; (6) there is no provision in said par. 2 for the *accumulation* of any income not paid to her. In the absence of any directions in the trust instrument otherwise, the net income is payable to the beneficiaries as soon as it is determined and received; and the Trustees have no right to accumulate same. *Godsey v. Lenderson,* 9 Tenn.App. 580, 585; *Harris v. France,* 33 Tenn.App. 333, 342, 232 S.W.2d 64; 54 Am.Jur., 385, Sec. 483; (7) there is an express provision for such accumulation in par. 3 of said Item Two, if she should die, etc., showing that the point was not overlooked by the testator; (8)

the only place in the entire will wherein the Trustees are *expressly* given discretion to provide simply "*comfortable*" support to the widow is in par. 5, which visualizes a minimum standard of support only in event the net income should be insufficient for her unqualified support provided in par. 2; (9) the statements made to D. T. Miller after the execution of the will shed no light upon the correct interpretation of par. 2 of Item Two, although the statements are obviously true; (10) there is no gift over of any accumulations in said par. 2.

██ Now addressing ourselves to the exact phraseology of par. 2 in question, the Trustees are to pay the widow the "*net income*"; not a part of same, nor such part as they may deem necessary for support, or any similar phraseology.

Yet realizing that, on the one hand, there was no practical reason why the entire net annual income should be paid in a lump sum to the widow, which she would herself either have to invest or lose the interest on same, yet on the other hand, her expenditures would no doubt call for more frequent replenishment at one period than another (and the proof shows that this has actually occurred), the testator gave the Trustees discretion to pay "monthly, quarterly, or as often, in the judgment of my Trustees, as their needs shall require.", etc.

The word "often" means frequent, many times, not seldom, in quick succession, etc. Roget's Thesaurus, 136; Any Dictionary (Eng.).

That is accordingly a provision of mutual benefit and in our view refers only to the time or intervals of pay-

ment, but *has no reference to the amount* to be paid at any interval or to the total payments the widow may demand up to the limit of the net annual income.

Both counsel have referred to a copious annotation in 172 A.L.R. beginning at page 455, which is abstracted in the 1956 Cumulative Supplement to 54 Am.Jur. under Trusts, Sec. 484. The point of discussion involved in the note generally is the ultimate question of whether the beneficiary has equitable title notwithstanding the trustee's discretion. Counsel have each taken the part of the annotation favorable in their opinion to their respective contentions but none of the cases solve the real question in the instant case. The brief of complainants copies the annotation beginning on page 481, wherein many cases are abstracted. It is obvious from a casual inspection that in all of them, the discretion given the trustee includes not only the time and mode but also *the amount* of payment to be made to beneficiaries. Perhaps the most helpful part of said annotation is the general statement on page 458, which states that in ascertaining the testator's intent in regard to the discretion intended to be vested in the trustees, it is important to consider (1) the presence or absence of a language importing in the first instance a gift of the immediate equitable title; (2) the certainty and positiveness or the absence of certainty and positiveness, of later qualifying or nullifying language setting forth the trustees' discretion; (3) the presence or absence of a specific gift over of anything not disposed of under the discretion; (4) the general scheme of the instrument as contemplating equal division, or absence of any such scheme; and (5) the attend-

ing circumstances, including especially matters of age, sex, and competency of the benficiaries.

In *Davis v. Mitchell, supra,* 27 Tenn.App. at page 224, 178 S.W.2d at page 906, it is said that neither the statute nor the usual provisions creating a strictly spendthrift trust where present, will prevent the immediate vesting of an equitable, transmissible estate in the beneficiaries of the trust, *unless the language of the will expressly or impliedly manifests a contrary intention on the part of the testator.*

From what we have said above, we have no difficulty in holding that the widow took the equitable title to the net income from the entire estate for and during her lifetime, under the conditions specified. That being true, the total net income annually would belong to the widow regardless of whether or not she drew it all down or left part of it in the hands of the Trustees. The repercussions from that situation, if she should die without having drawn the money down, are prophesied by what occurred in the case of *Earle v. Com'r,* 6 Cir., 1946, 157 F.2d 501.

It is our conclusion, therefore, that the able chancellor was in error in entering the decree as above abstracted. We are of opinion and hold that the accumulations of net income plus earned interest are the property of appellant, Mrs. Marion Friberg Miller, and that she may either draw them down at this time or, the Trustees being agreeable, she may let remain such part thereof in the hands of the Trustees as she so desires; any withdrawals of same to be exercised within a reasonable time and manner having due regard for the nature and form of

investments in which said funds are now invested; and future accruals of net income are to be subject to the demand of appellant in accordance with this opinion.

Reverse and remand for further proceedings in accordance herewith.