# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
September 20, 2011 Session

## FIRST TENNESSEE BANK, N.A. v. HAROLD WOODWARD ET AL.

### Appeal from the Chancery Court for Knox County
### No. 178062-2      Daryl R. Fansler, Chancellor

---

### No. E2011-00599-COA-R3-CV-FILED-OCTOBER 25, 2011

---

First Tennessee Bank, N.A. ("the Trustee") is the trustee of a testamentary trust established under the will of Steve Woodward ("the Deceased") for the benefit of his son, Jeffrey Clinton Woodward ("the Son"). Steve Woodward died in 2005. The Deceased's will ("the Will") provides that at his death a trust was to be created for the benefit of the Son. The Son is to receive a monthly payment from the trust and, at age 50, the Son is to receive the corpus of the trust. The Deceased's brother, Harold Woodward ("the Brother"), is the recipient under the Will of "all of the property that would make up my residual estate and not named herein. . . ." The trust was created and payments were being made to the Son until he died in 2009 at the age of 33. The Trustee filed this action asking the court to determine its obligations as trustee with respect to the corpus of the trust. The suit named all parties with a possible interest in the outcome as defendants, including the Son's estranged wife, Andrea Woodward ("the Wife"). The trial court ordered the Trustee to distribute the corpus of the trust to the Brother. The Wife appeals. We reverse.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
### Reversed; Case Remanded

CHARLES D. SUSANO, JR., J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and JOHN W. MCCLARTY, J.J., joined.

T. Turner Snodgrass, Nashville, Tennessee, for the appellant, Andrea Woodward.

Wayne R. Kramer, Knoxville, Tennessee, for the appellee, First Tennessee Bank, N.A.

Amanda M. Busby, Knoxville, Tennessee, for the appellee, Harold Woodward.

# OPINION

## I.

The procedural history of this case is adequately set forth in the orientation paragraph of this opinion. The parties stipulated at a hearing held by the trial court that the facts are as set forth in a memorandum of law filed by the Trustee in anticipation of the final hearing. We will quote the pertinent stipulated facts verbatim, omitting citations to the record, headings and paragraph numbering:

> Steve Woodward [,the Deceased,] died testate on November 17, 2005 at the age of fifty-six (56) as a resident of Trousdale County, Tennessee. At the time of his death, [the Deceased] was not married, having been divorced from Jamie Harper since December 16, 2002. He was survived by [the Son], [the Brother and another brother,] Lakin Corder Woodward and by a sister-in-law, Carlos Ann Woodward [, all of whom are beneficiaries under the Will]. Subsequent to his death, . . . [the Will] was offered and accepted for probate in the Chancery Court for Trousdale County . . . The administration of [the Deceased's] Estate . . . was closed by Order entered October 31, 2006.
>
> Pursuant to the terms and conditions of [the Will], a Trust ("Trust") was created for the benefit of [the Son]. [The Trustee] was named Trustee under the Trust, is currently serving in such capacity and has been so serving as Trustee since the funding of the Trust on or about December 7, 2006.
>
> * * *
>
> [The Son] died intestate on October 27, 2009 at the age of thirty-three (33). He was the sole beneficiary of the Trust.
>
> At the time of [the Son's] death, defendant Andrea Woodward was separated from but still legally married to [the Son] and she is [the Son's] sole heir at law pursuant to Tenn. Code Ann. § 31-2-104 (a)(1).
>
> [The Son] was not survived by his father, any children, grandchildren or other lineal descendants or ancestors other than

his mother. Nor did [the Son] ever have any children, grandchildren or other lineal descendants.

Harold Woodward, Lakin Corder Woodward, Andrea Woodward and Carlos Ann Woodward are the only parties who could have an interest in the Trust, said individuals being either beneficiaries under [the] Will, heirs at law of [the Deceased] and/or heirs at law of [the Son].

Pursuant to Article V of [the] Will, [the Son] was entitled to a distribution from the Trust in the amount of One Thousand Dollars ($1,000.00) per month until reaching the age of fifty (50). In addition, every year in January, [the Son] was to receive a four percent (4%) increase in his monthly draw. The Trustee was granted various powers and authority in connection with the Trust and its administration.

Among other things, the terms of the Trust under Article V of the Will provided as follows:

> I direct that <u>when</u> Jeff reaches the age of fifty (50) years he shall receive the corpus of the trust fund and any income therefrom and the trust shall terminate. (emphasis added)

Neither the Will nor the specific terms of the Trust includes any language as to the disposition of the Trust corpus and remaining undistributed income . . . in the event that [the Son's] death . . . occurred prior to his reaching the age of fifty (50). . . .

Article VI of the Will, "**Residual Estate**," provides as follows:

> I hereby give, devise and bequeath all of the property that would make up my residual estate and not named herein to my brother, Harold Woodward, to be his absolute property.

In addition to the above cited provisions in [the] Will, the following provisions are also relevant to the issues . . . :

At the making of this last will and testament I have one son, Jeffrey Clinton Woodward. I hereby make the provisions contained in this last will and testament for Jeff.

In the event I am pre-deceased by my son, Jeffrey Clinton Woodward, there will be no trust as described hereinafter, and all of the estate that was considered trust property will go to my brother, Harold Woodward. If Jeffery Clinton Woodward and Harold Woodward pre-decease me, my Estate goes to my brother, Lakin Corder Woodward.

(Bold and underlining in original.)

The trial court noted that all parties had ample authority to support their respective positions, provided they were correct about the intent of the Deceased. Therefore, the court held that "the controlling and deciding factor here is the intent of [the Deceased]." The court ultimately found "that it was the intent of [the Deceased] that if [the Son] predeceased him or did not live until fifty (50) years old then the funds that would otherwise be placed into the Trust would go to [the Brother] under the residuary clause of [the Will.]" The court entered an order directing the Trustee to distribute the corpus of the trust and any undistributed income to the Brother.

## II.

The Wife appeals. Her issue on appeal is

[w]hether the [t]rial [c]ourt [e]rred in finding that [the Deceased] expressed the intent in his will, that should [the Son] die prior to attaining the age of fifty years, that the funds placed in trust for [the Son's] benefit be distributed to the [Brother], pursuant to the [W]ill's residuary clause.

## III.

When an appellate court is

called upon to construe a will, and there is no dispute in the evidence as to any material fact, then the question on appeal is one of law. Accordingly, our review is de novo with no

-4-

presumption of correctness accompanying the lower courts' conclusions of law.

*In re Estate of McFarland*, 167 S.W.3d 299, 302 (Tenn. 2005)(citations omitted).

IV.

We will begin by noting a few undisputed principles that courts apply in construing a will. The "cardinal rule" in construction of a will is to discover the intent of the testator and give it effect unless the end result is illegal or against public policy. *McFarland*, 167 S.W.3d at 302; *Third National Bank v. First American National Bank*, 596 S.W.2d 824, 828 (Tenn. 1980). The court should not find an intent that is not justified by the language of the will itself. *In re Estate of Pegram v. Pegram*, 189 S.W.3d 227, 230 (Tenn. Ct. App. 2005). The intention must be ascertained from the words used in the will giving due regard to the context, scope and purpose of the instrument. *McFarland*, 167 S.W.3d at 302.

V.

All parties acknowledge that the key issue is whether the Deceased intended, once the trust was created, for the remainder of the trust to vest in the Son even if he did not live to be 50 years old.[1] The Wife argues that the language of the Will allows only one conclusion – that the Deceased intended that once the Son survived his father and the trust was created, then the Son, or the Son's beneficiaries, would receive the full benefit of the trust, even if he did not live to age 50. She argues also that several principles of law require this result. Notwithstanding the arguments made by the Brother and the Trustee, which we will discuss in due time, we agree with the Wife.

The Wife correctly points out that paragraph V. of the Will, which creates the trust, makes no provision for divesting the Son of the trust's benefits once it is funded. The Will directs, unconditionally, that certain liquid assets "be placed in an income-producing trust for [the Son]." It further directs, again unconditionally, that the Son receive from the trust "the sum of One Thousand Dollars ($1,000.00) per month . . . until he reaches the age of fifty (50) years old" with annual increases to the monthly benefit. Finally, it unconditionally directs that "when [the Son] reaches the age of fifty (50) years he shall receive the corpus of the trust fund and any income therefrom and the trust shall terminate." The Wife correctly points out that the language terminating the trust "when" the Son reaches the age of 50 does

---

[1] The issue in this case is the intention of the Deceased *when* he executed his will; the issue is *not* whether the Deceased, if he had had the benefit of foresight, would have wanted the corpus of the trust to go to the Son's wife if, as happened, they were separated at the time of the Son's death.

not use the word "if." Had the word "if" been used, its use might well have implied that the Son would not be entitled to the corpus *unless* he reached the age 50; the word "when" suggests that the Deceased intended for the Son to enjoy the full benefit of the trust but that the Deceased, for whatever unstated personal reasons, wanted the Son to be content with the income until some later date when the trust would terminate.

In our view, neither the language that requires the Son to survive the Deceased nor the residuary clause suggest that the Deceased intended to divest the Son of the trust once it was created. We have already set forth the subject language verbatim and will not repeat it here. The first event, *i.e.*, the Son dying before his father, obviously did not happen as evidenced by the fact that the trust was created. The residuary clause only covers "property . . . not named herein . . ." The assets in the trust fund are "named herein." The Trustee acknowledges in its brief that neither provision answers the question of what happens in the event a trust is created and the Son dies before age 50. The trial court also found that to be true. We agree.

The stated and otherwise obvious purposes of the Will are to (1) provide for the payment of the Deceased's lawful debts; (2) provide gifts of specific property to the Brother and to the Deceased's other brother, Lakin Woodward; (3) "make . . . provisions . . . for" the Deceased's only child, the Son; and (4) distribute any unidentified "residual" property to the Brother. "When one controlling or dominant purpose . . . is expressed, it is the duty of the court to so construe [a] will as to effectuate this major intention, and to construe all subsidiary clauses so as to bring them into subordination." *Davis v. Mitchell*, 178 S.W.2d 889, 912 (Tenn. Ct. App. 1943). Of the purposes we have identified, the desire to "make . . . provisions" for the Son dominate. Paragraph V. of the Will was devoted to making those "provisions" through the trust. We believe that in light of how much language in the Will is devoted to that dominant purpose, if the Deceased had meant for that provision to be contingent upon some future event, he would have expressly so stated.

Thus, upon examining the trust language in context, and in light of the dominant purpose, we are convinced that the intent was for the right to the trust to vest in the Son *at the time of the death of the Deceased*. This result is consistent with the holding of numerous cases, including *Harris v. France*, 232 S.W.2d 64, 72 (Tenn. Ct. App. 1950), and *National Bank of Commerce v. Dortch*, 1987 WL 19510 (Tenn. Ct. App.W.S., filed Nov. 9, 1987). *Harris* was a will construction case. The will placed a farm with approximately 1,300 acres of land in trust for the benefit of the testator's nieces and nephews and their children. 232 S.W.2d at 67. The beneficiaries were to receive the profits from the farm until the youngest grandniece or grandnephew reached the age of 30, at which time the trust would terminate and the beneficiaries would receive their share of the corpus of the trust. The issue was

whether the devise violated the rule against perpetuities[2] by making a gift to a class that was contingent on survival of a child that was not yet born at the testator's death. *Id*. at 66. This court held that the gift did not violate the rule against perpetuities because the rights of the beneficiaries, even those not yet born, *vested at the death of the testator*. *Id*. at 73. Although the Court discussed multiple reasons for its holding, one rule of law applied by it was that

> an intermediate gift of income accruing during the term of an active trust at the end of which the corpus is to be distributed among the beneficiaries, is conclusive, nothing else appearing, of the intention of the testator that an equitable, transmissible estate in fee *should vest in the beneficiaries immediately upon his death*.

*Id*. at 72 (emphasis added). **Harris** goes on for pages discussing nuances of the will and of the rule against perpetuities, but the key issue in that case is the intention of the testator as to how and when the beneficiaries' rights in the trust vested. The same is true in the present case. The Court in **Harris** described what the grandnieces and grandnephews obtained at the death of the testator as "an equitable estate in fee," and further stated that "it was not the vesting of the estate in the beneficiaries which the testator desired to delay, but the termination of the trust, which does not exclude the idea of a prior vesting of an equitable estate in fee in the beneficiaries." *Id*. at 72-73 (citation omitted).

The **Dortch** case is very similar in many respects to the present case. It was filed by a bank that was the trustee of a testamentary trust asking the court to determine to whom the bank should pay the remainder in the trust. 1987 WL 19510 at *1. Pursuant to the language in the will, the "net income" of the trust was to be paid into the hands of one Trilby McGoodwin until her death and then "the net income . . . shall go to [her] children, share and share alike, for twenty (20) years, being paid to them . . . and then the corpus shall be divided equally among them." *Id*. The trial court held that the testator intended that any interests of Trilby's children to the corpus of the trust were contingent upon them living 20 years after Trilby's death. *Id*. at *2. This Court reversed the judgment of the trial court. We applied **Harris** and found "the fact that the children of [Trilby] were to receive both the income and the corpus of the trust determinative of the testatrix's intent." *Id*. at *5. The result of our

---

[2]There is no need for lengthy elaboration on the rule against perpetuities. As stated in **Harris**, 232 S.W.2d at 67, it's substance is:

> No interest is good unless it must vest, if at all, not later than 21 years after some life in being at the creation of the interest.

holding in **Dortch** was that the spouse of Trilby's son James took his share of the corpus of the trust even though James did not outlive Trilby by 20 years.  *See id*. at \*2,6.

The Trustee attempts to distinguish **Dortch** by the fact that the language of the will in **Dortch** directed that the beneficiaries "were to receive the income for a period of [twenty] years and then they were to receive the corpus" whereas in the present case the Son "was to receive the principal only <u>when</u> he reached age 50."  (Emphasis in Trustee's brief.)  We do not agree with this distinction.  It not only misconstrues the Will, but also suffers the weakness of constructing the conclusion from the very fabric of the question.  In other words, it concludes that since the Son was to receive the corpus at age 50, then his interest was contingent and he was "only" entitled to the corpus if he lived to age 50.  The weakness of the Trustee's distinction can easily be shown by casting the controlling facts of the present case into the language the Trustee employs to describe the will in **Dortch**; *i.e.*, "The Son was to receive the income until he reached age 50 and then he was to receive the corpus."

The Brother attempts to weaken the force of **Dortch** by arguing that the will in that case did not "appear" to have a residuary clause, therefore the Court there was striving to prevent intestacy.  It is by no means clear that the will in **Dortch** did not contain a residuary clause. The opinion does not say whether or not there is a residuary clause. There is one mention of the possibility of a "partial intestacy" in the Court's discussion of the parties' contentions.  *Id*. at \*2.  The fact that such a possibility was not further discussed suggests that, even if true, that possibility was not particularly important to the resolution of the case. The Brother also attempts to weaken the force of **Dortch** by the fact that it is unpublished. We have not blindly followed **Dortch** as the authoritative holding of a higher court that we cannot question.  We have simply examined the facts and reasoning of the case and found it persuasive that our construction of the Will in the present case to place a vested interest in the Son is correct.  We also note that the **Harris** opinion*,* which **Dortch** followed, is published.  The Brother offers no direct criticism of **Harris**.

We turn now to the other arguments offered by the Brother and the Trustee.  The Trustee purports to take no position but argues that the trial court was correct.  Both the Brother and the Trustee argue that, because the Son does not receive the corpus until he reaches the age of 50, this means he cannot have attained any vested interest unless he reaches age 50, which he did not. We have already rejected this argument as the product of circular reasoning, and as inconsistent with the language of the trust provision considering the dominant purpose and context of the Will.  We need not repeat that analysis.

The final argument offered by the Brother and the Trustee is that the very definition of a contingent interest is one that requires the beneficiary to attain a certain age or some similar milestone.  They offer treatise definitions as well as some selective language from

***American National Bank v. Embry***, 181 S.W.2d 356 (Tenn. 1944). It should go without saying that we cannot blindly extrapolate from a generic definition in a treatise or dictionary to create a result that is inconsistent with the language of the Will, considering its purpose and the context of the language. The language of the will in ***Embry*** upon which they rely is as follows:

> I give, devise and bequeth all the rest and residue of my estate, real, personal and mixed, and wherever situate, to the American National Bank of Nashville, as Trustee, to be held and invested by it in trust, as hereinafter provided, and to pay the net income thereof to John William Embry . . . until such time as he shall reach the age of Thirty (30) years.

***Id***. at 357. The issues in ***Embry*** were whether the beneficiary's right to receive income began at the testator's death or at some later time and whether the "net income" that the beneficiary was to receive included all income that came into the estate from the time of the testator's death as opposed to only that income derived from the residuary estate. ***Id***. The ***Embry*** opinion did not see fit to provide the reader with more than the one paragraph of the will from which we have quoted. The Court stated, nevertheless, that

> [t]he defendant here [,John William Embry,] takes a life estate in the *income* from the trust, which, if he survives the age of 30 years, will be enlarged to an absolute ownership of the corpus.

***Id***. at 357-58 (emphasis in original). We have no reason to question the High Court's statement. We can only believe that some other language in the will which we have not seen provides support for the Court's statement. We note that the ***Embry*** opinion speaks repeatedly of contingent beneficiaries without giving an explanation of the language behind that characterization, just as there is no explanation of why John William Embry had a right to the corpus. We see nothing in ***Embry*** that is inconsistent with the result we reach today. We have not attempted to establish an absolute rule that a testator cannot establish a testamentary trust that is contingent. We have merely tried to decipher the intent of the Deceased in this particular case. "It has often been said, and truly, that precedents are of little value in the construction of wills because no two are identical . . . ." ***Davis***, 178 S.W.2d at 905.

To summarize, we hold that the language of the Will creates a trust for the benefit of the Son without providing a mechanism for divesting him of the trust, once it had been created. Language in the will requiring the Son to survive his father means very little in the context of this dispute because the Son did survive the Deceased. The residuary clause does

not require a different result because it applies only to "property . . . not named herein." The trust property and the beneficiary are "named herein." Established law supports our conclusion and there is nothing persuasive to weigh against our ultimate holding that the Deceased intended the Son's right to the income and corpus of the trust to vest at the death of the Deceased.

VI.

The judgment of the trial court is reversed. Costs on appeal are taxed equally to First Tennessee Bank, N.A., and Harold Woodward. This case is remanded for such proceedings, if any, as may be necessary in light of our opinion.

_____
CHARLES D. SUSANO, JR., JUDGE